# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DON'S FRYE, on behalf of herself and all
others similarly situated,

                Plaintiff,

      v.

L'OREAL SA, FRANCE, a French
Corporation, and L'OREAL USA, INC.,
a New York corporation,

                Defendants.

Court No.: 08 C 213

Judge Gettleman
Magistrate Judge Denlow

## L'OREAL USA, INC.'S MEMORANDUM IN SUPPORT OF MOTION PURSUANT TO RULE 12(B)(6)

# TABLE OF CONTENTS

Page

I.    PLAINTIFF'S COMPLAINT ................................................................................ 1

    A.    The Allegations ................................................................................ 1

    B.    Plaintiff's Complaint and Judicially Noticeable Information Demonstrate the
          Implausibility of Her Claims ................................................................ 2

II.   ARGUMENT ...................................................................................................... 6

    A.    Plaintiff's Complaint Suffers Multiple Defects and Does Not State a Cause of
          Action Plausible on Its Face ................................................................ 6

    B.    Plaintiff Has Failed to State a Claim for Violation of the Illinois Consumer
          Fraud Act ........................................................................................... 7

        1)    The Elements of a Claim Under the Illinois Consumer Fraud Act ...................... 7

        2)    Plaintiff Has Not Sustained Actual Damage ........................................... 8

            i)    Plaintiff Has Not Pled Facts to Permit the Recovery of Her Purchase Price .. 8

            ii)   Plaintiff Is Not Entitled to Medical Monitoring Damages ........................... 10

        3)    Plaintiff Has Not Alleged a Violation of the ICFA ................................... 11

            i)    Plaintiff Has Not Pled Her Claim in Conformity With Rule 9(b) ............... 11

            ii)   Plaintiff Has Not Identified Any Deceptive Conduct .................................. 12

    C.    Plaintiff Has Not Stated a Claim for Breach of Warranty Under the U.C.C. or
          Magnuson Moss ................................................................................... 13

        1)    Lack of Privity Bars Plaintiff's Warranty Claims ................................... 13

        2)    Plaintiff Has Not Pled a Breach of the Implied Warranty of Merchantability ... 14

        3)    Plaintiff Has No Damage ................................................................ 14

        4)    Plaintiff's Warranty Claim Fails for Lack of Notice ................................ 15

    D.    Plaintiff's Common Law Tort Claims Fail .............................................. 15

        1)    Plaintiff Has Sustained No Damage .................................................... 15

        2)    The Economic Loss Doctrine Bars Plaintiff's Tort Claims ........................... 16

i

**Table of Contents**
**(Continued)**

Page

3)  Plaintiff Has Not Pled Facts to Support Her Strict Liability Count.................... 17

4)  Plaintiff Has Not Properly Pled a Count for Negligence..................................... 17

E.  Plaintiff Has No Claim for Unjust Enrichment.......................................................... 18

F.  Plaintiff Lacks Standing to Seek Injunctive Relief.................................................... 18

III.  CONCLUSION ................................................................................................................. 19

CH/281530v1

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Banker's Trust Co. v. Old Republic Ins. Co.*,
959 F. 2d 677 (7th Cir. 1992) ........................................................11, 13

*Bell Atlantic Corp. v. Twombley*,
___ U.S. ___, 127 S. Ct. 1955 (2007)..........................................6, 7, 13

*In re Bridgestone/Firestone, Inc.*,
288 F. 3d 1012 (7th Cir. 2002) ...............................................................15

*Briehl v. General Motors*,
172 F. 3d 623 (8th Cir. 1999) .................................................................15

*Carey v. Kerr-McGee Corp.*,
999 F. Supp. 1109 (N.D. Ill. 1998) ........................................................10

*Conley v. Gibson*,
355 U.S. 41, 78 S. Ct. 99 (1957) ..............................................................7

*Custom Automated Machinery v. Penda Corp.*,
537 F. Supp. 77 (D. D.C. 1982) .............................................................14

*Fiedler v. Clark*,
714 F. 2d 77 (9th Cir. 1983) ...................................................................18

*Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*,
814 F. Supp. 720 (N.D. Ill. 1993) ..........................................................11

*In re General Motors Type III Door Latch Litig.*,
2001 WL 103434 (N.D. Ill. 2001) ..........................................................15

*Limestone Development Corp., v. Village of Lemont, IL*,
520 F. 3d 797 (7th Cir. 2008) ...................................................................7

*Oshana v. Coca-Cola Co.*,
472 F. 3d 506 (7th Cir. 2006) .................................................................18

*In re Paoli*,
916 F.2d 829 (3d Cir. 1990).....................................................................10

*Solvay Pharmaceuticals v. Global Pharmaceuticals*,
298 F. Supp. 2d 880 (D. Minn. 2004) .....................................................18

CH/281530v1

**Table of Authorities**
**(Continued)**

Page

*United States v. Wood,*
    925 F. 2d 1580 (7th Cir. 1991) ............................................................3

*Voelker v. Porsche Cars North America,*
    353 F. 3d 516 ..............................................................................13

*Yost v. General Motors,*
    651 F. Supp. 656 (D.N.J. 1986) ...........................................................15

**STATE CASES**

*Avery v. State Farm,*
    216 Ill. 2d 100 (2005) ..............................................................8, 9, 13

*Ayers v. Township of Jackson,*
    106 N.J. 557 (1987) .......................................................................11

*Batteast v. Wyeth Laboratories, Inc.,*
    137 Ill. 2d 175 (1990) ....................................................................17

*In re Chicago Flood,*
    176 Ill. 2d 179 (1997) ....................................................................16

*City of Chicago v. Beretta,*
    213 Ill. 2d 351 (2004) ....................................................................16

*Connick v. Suzuki Motor Co., Ltd.,*
    174 Ill. 2d 482 (1996) ....................................................................15

*Crowe Name Plate & Mfg. Co. v. Dammerich,*
    279 Ill. App. 103 (4th Dist. 1935) ........................................................17

*Doyle v. White Metal Rolling & Stamping Corp.,*
    249 Ill. App. 3d 370 (1st Dist. 1993) .....................................................16

*Hansen v. Mountain Fuel Supply Co.,*
    858 P. 2d 970 (Utah 1993) .................................................................11

*Jensen v. Bayer,*
    371 Ill. App. 3d 682 (1st Dist. 2007) .................................................10, 13

*Kirk v. Michael Reese Hospital,*
    117 Ill. 2d 507 (1987) ....................................................................15

CH/281530v1

Table of Authorities
(Continued)

Page

*Lewis v. Lead Industries Ass'n,*
    342 Ill. App. 3d 95 (1st Dist. 2003) ...................................................................10

*Martin v. Allstate Insurance Co.,*
    92 Ill. App. 3d 829 (1st Dist. 1981) ...................................................................9

*Martin v. Ortho Pharmaceutical,*
    169 Ill. 2d 234 (1996) ....................................................................................17, 18

*Moorman Manufacturing Co. v. National Tank Co.,*
    91 Ill. 2d 69 (1982) .........................................................................................16

*Mulligan v. QVC, Inc.,*
    2008 WL 1990450 (1st Dist. May 7, 2008) ..................................................9, 18

*Oliveira v. Amoco Oil Co.,*
    201 Ill. 2d 134 (2002) ......................................................................................7

*Perona v. Volkswagen,*
    292 Ill. App. 3d 59 (1st Dist. 1997) ...............................................................15

*Potter v. Firestone,*
    6 Cal. 4th 965 (1993) ......................................................................................10

*Price v. Philip Morris,*
    219 Ill. 2d 182 (2006) ......................................................................................9

*Raintree Homes, Inc. v. Village of Long Grove,*
    209 Ill. 2d 248 (2004) ......................................................................................9

*Redland Soccer Club v. Department of the Army,*
    696 A. 2d 137 (Pa. 1997) ................................................................................10

*Rothe v. Maloney Cadillac, Inc.,*
    119 Ill. 2d 288 (1988) ......................................................................................13

*Valenti v. Mitsubishi Motor Sales of Am., Inc.,*
    332 Ill. App. 3d 969 (1st Dist. 2002) ..........................................................14, 15

*Verb v. Motorola,*
    284 Ill. App. 3d 460 (1st Dist. 1996) ...........................................................9, 16

v

**Table of Authorities**
**(Continued)**

Page

*Yu v. International Business Machines,*
  314 Ill. App. 3d 892 (Ill. App. Ct. 2000) ................................................................15

## FEDERAL STATUTES

40 Code of Federal Regulations, section 141.80(c) ...........................................................3

40 Code of Federal Regulations, section 745.65(c) ...........................................................3

Federal Rules of Civil Procedure, Rule 8(a)(2) ...............................................................6

Federal Rules of Civil Procedure, Rule 9(b)...........................................................11, 12

Federal Rules of Civil Procedure, Rule 12(b)(6) ..........................................................3, 6

15 United States Code, section 2301 *et seq.* ...............................................................13

15 United States Code, section 2301(7)..........................................................................13

21 United States Code, section 331 ................................................................................18

21 United States Code, section 332 ................................................................................18

21 United States Code, section 337(a).............................................................................18

## STATE STATUTES

California Code of Regulations, Title 22, section 12801(c) ............................................5

California Health & Safety Code, sections 25249.5 *et seq.* ..........................................5

810 ILCS 5/2-314 ....................................................................................................13, 14

810 ILCS 5/2-607(3)(a) ...................................................................................................15

810 ILCS 5/2-714(b)........................................................................................................14

815 ILCS 505/2.................................................................................................................12

815 ILCS 505/7(a) ..............................................................................................................9

815 ILCS 505/10a(a)........................................................................................................8, 9

CH/281530v1

**Table of Authorities**
**(Continued)**

Page

MISCELLANEOUS

U.S. Department of Health and Human Services, Agency for Toxic Substances and
Disease Registry, *Toxicological Profile for Lead*, 1 (August 2007)......................................3, 4

This putative nationwide class action, which seeks free lipstick and unnecessary medical care, tracks the allegations of an earlier filed action, *Koronthaly v. L'Oreal USA, Inc.*, 07-CV-05588, currently pending in the District of New Jersey. Plaintiff, Don's Frye, has no more stated a plausible claim for relief than has Ruth Koronthaly. The trace concentrations of lead alleged to exist in certain L'Oreal lipsticks have caused no injury, harm or actual damage. Even if Plaintiff's allegations about lead in lipstick were true, other allegations of her complaint negate their relevance. In light of information publicly available and judicially noticeable, Plaintiff has pled herself out of court. Defendant L'Oréal USA, Inc. (L'Oreal) respectfully requests that this Court dismiss her complaint and each count set forth therein.

## I.    PLAINTIFF'S COMPLAINT

### A.    The Allegations

Plaintiff purports to have purchased two types of L'Oreal lipstick – "Colour Riche True Red" and "Colour Riche Classic Wine" – while residing in Illinois and Kentucky. (¶ 11) Plaintiff alleges that these products contained lead in concentrations ranging from .50 to .65 parts per million (ppm). (¶¶ 31-32) Ingestion of lead, she alleges, may cause adverse health effects, especially in pregnant women and children. She further alleges that the U.S. Food and Drug Administration (FDA) has established a lead standard for candy of .1 ppm to protect children from direct ingestion of lead. (¶ 29) Plaintiff does not claim that she, herself, ever used these products while pregnant or as a child. She does not purport to have eaten lipstick, but equates the application of lipstick with the consumption of candy. (¶ 30)

Plaintiff wishes to represent a class of "all persons throughout the United States and its territories who purchased lipstick products that contained the complained of lead which were manufactured, marketed and/or distributed, or placed in commerce for sale, by L'Oréal... from the

offering of sale of the concerned lipstick products to the present." (¶36) She does not claim to represent girls or pregnant women, or even adult users of lipstick, merely lipstick purchasers.

Plaintiff does not contend that the lipstick failed to perform the functions of lipstick, or that it did not provide the color or texture that she expected. She has not alleged that the value of the lipstick "as warranted" exceeded its value "as delivered." She does not assert that it had an economic value of $0.

Plaintiff has not sustained any physical injury from L'Oréal products, but merely asserts that she "*may* have already been poisoned." (¶37) (emphasis added) She does not allege how often she used the L'Oréal products, how much of them she used, or over what time period. She does not claim that she has ever undergone a blood, hair, urine or other test for lead poisoning, but apparently awaits a favorable outcome in this litigation so that L'Oréal will have to pay for it. She has not alleged that her lead exposure has placed her at a significantly increased risk of illness, that medical monitoring would yield any clinical benefit, or that she requires any treatment beyond what would otherwise be medically prudent.

Plaintiff has attempted to assert counts for violation of the Illinois Consumer Fraud Act, breach of implied warranty under the U.C.C. and Magnuson Moss Act, strict liability, negligence *per se*, unjust enrichment and injunctive relief.

**B.    Plaintiff's Complaint and Judicially Noticeable Information Demonstrate the Implausibility of Her Claims**

In support of her claims, Plaintiff has set forth the *concentrations* at which lead allegedly occurs in lipstick, and the health consequences of lead poisoning in general. She has not alleged that these concentrations have caused her, or anyone else, to ingest a harmful *dose* of lead, capable of producing adverse health effects. While she asserts that the application of lipstick several times a

day, on a daily basis, "can result in significant exposure levels," (¶ 22) she has not alleged that *she* applied it in such manner, or that *she* has had a "significant exposure."

According to a report issued by the U.S. government, lead occurs widely in the environment, and humans encounter lead exposure from a wide variety of sources.[1]  Indeed, the numerous regulations establishing health protective lead exposure standards point to the ubiquitous nature of lead exposure, and also to the weight given by regulators to the context of the anticipated exposure. *See, e.g.*, 40 C.F.R. § 141.80(c) (setting action level for drinking water of .015 mg/L); 40 C.F.R. § 745.65(c) (setting limit under TSCA of 400 ppm for bare soil in areas where children play.)  The ATSDR Toxicology Profile for Lead notes that the potential for adverse health effects depends on a host of circumstances:

> If you are exposed to lead, many factors will determine whether you will be harmed.  These factors include the dose (how much), the duration (how long), and how you come in contact with it.  You must also consider any other chemicals you are exposed to and your age, sex, diet, family traits, lifestyle, and state of health.

U.S. Department of Health and Human Services, Agency for Toxic Substances and Disease Registry, *Toxicological Profile for Lead*, 1 (August 2007) (Exhibit A).[2]

Plaintiff's only allegation to support the medical significance of the lead concentrations reportedly in lipstick is FDA's "limit for levels of lead in candy" of .1 ppm (¶¶ 29, 30, 31, 32).  This

---

[1]      See, generally, Toxicology Profile for Lead, U.S. Dept. of Health and Human Services, Public Health Service, Agency for Toxic Substances and Disease Registry (ATSDR).  L'Oreal attaches the Summary as Exhibit A hereto.  A party moving pursuant to Rule 12(b)(6) may support the motion with documents referred to or relied upon in the complaint, or otherwise judicially noticeable. *United States v. Wood*, 925 F. 2d 1580, 1582 (7th Cir. 1991)  L'Oreal has NOT moved for summary judgment, but has simply requested in connection with this 12(b)(6) motion that the Court take note of the statements of the FDA with respect to the health based standard on which Plaintiff has predicated her case.  It has also asked the Court to consider a statement of the California Attorney General to the extent that this public statement bears on the plausibility of the Plaintiff's claims.  All of these documents are publicly available statements of government agencies, and the Court may find copies on their official websites at the URL addresses shown on the cover page marking each exhibit.  Even if the Court declines to consider these sources of information, however, each of the counts of the Complaint suffer from multiple legal defects that make dismissal appropriate.

[2]      Even the Report of the Campaign for Safe Cosmetics relied upon by the plaintiff, "*A Poison Kiss:  The Problem of Lead in Lipstick,*" recognizes that several variables affect the potential for harm.  (Exhibit B)  The report does not identify *any* specific instance where lipstick caused harmful exposure to *any* woman.

CH/281530v1

standard actually appears in a "Guidance for Industry" document titled "Lead in Candy Likely to be Consumed Frequently by Small Children: Recommended Maximum Level and Enforcement Policy." (Exhibit D)  The standard acknowledges that low levels of lead consumption do not present a health risk[3], even to the most susceptible members of society.[4]  By invoking this standard, Plaintiff acknowledges that certain concentrations of lead are "accepted" (¶¶ 31, 32) and offer protection from harmful lead ingestion. (¶ 29)  Her allegations moreover demonstrate, albeit unwittingly, that lead will not create a risk of injury at the concentrations reported to exist in lipstick.

Plaintiff's reliance on the .1 ppm standard for candy negates her claim because candy is consumed in greater quantities and will deliver *a much higher total dose* of lead than will lipstick application.[5]  FDA, responding to concerns that lead concentrations in lipstick exceed the standard for candy, has noted "[I]t is not valid to compare the FDA recommended level for lead in candy, a product intended for ingestion and which may be consumed on a regular basis with lead in lipstick, a product intended for topical use and which is ingested in much smaller quantities than candy." (Exhibit C)  In establishing the .1 ppm standard for candy, FDA assumed that individual candy servings would be equal to or greater than 21 grams (.75 oz) (Exhibit F), while plaintiff has alleged that a woman consumes 4 pounds of lipstick in a lifetime.  Over a 70 year period, this yields a daily lipstick intake of .071 grams.  Thus, notwithstanding the allegedly higher concentration of lead in lipstick (.65 ppm vs .1 ppm), the much greater amount of candy consumed (21 grams vs .071 grams)

---

[3]    FDA has determined that the standard of .1 ppm/lead is adequate to protect the safety of children – a population more susceptible to lead injury than adults:  "FDA is recommending that lead levels in candy products likely to be consumed frequently by small children not exceed 0.1 ppm because such levels are achievable under good manufacturing practices and *would not pose a significant risk to small children for adverse effects*." (Exhibit D at Sec. II.a., emphasis added.)  "FDA has estimated the potential exposure of small children from candy with lead levels no higher than we anticipate to be present in candy produced when we issue the 0.1 ppm guidance level and has concluded that *the lead in such candy products would not constitute a health hazard*." (Exhibit E, Sec. V.)

[4]    For example, according to the ATSDR, about 99% of lead taken into the body of an adult will leave the body as waste within a couple of weeks, as compared with 32% for a child.  Exhibit A at 1.4.

[5]    Dose is a function of concentration *and volume consumed*.  This principle is easily demonstrated by comparing the fat dose associated with differing volumes of 1% and 2% fat milk.  Someone who drinks 2 cups of 1% fat milk receives the same fat intake as someone who drinks 1 cup of 2% fat milk.  Someone who drinks 3 cups of 1% milk actually receives a 50% higher dose of fat than someone who drinks 1 cup of 2% fat milk.

4

yields a much higher lead exposure. In fact, the overall lead exposure from a daily serving of candy will be approximately 46 times greater than from the daily application of lipstick containing the highest alleged concentration of lead, .65 ppm.[6]

The California Attorney General has also noted that a .1 ppm standard for candy does not mean that higher concentrations of lead in lipstick present a health risk. (Exhibit H) In response to a 60 day notice of intent to pursue a claim under California's Proposition 65,[7] the Attorney General noted that a .1 ppm standard for candy "was based on a variety of factors, most importantly concerning the amount of candy ingested by children. Since people do not eat lipstick the way children eat candy, the two analyses of exposure are quite different."[8]

The Attorney General further explained that California has established a "No Observable Effect Level" (NOEL)[9] for lead, and has established a .5 microgram/day "safe harbor" Maximum Allowable Dose Level (MADL) that is *1,000 times lower* than the NOEL. Based on an exposure calculation that assumed lead concentrations in lipstick as reported by the Campaign for Safe Cosmetics, the Attorney General concluded that the lipstick products would not come close to causing exposures in excess of the MADL. He concluded: "lipstick with lead concentrations found in the CSC Report could not plausibly be considered to trigger a duty to warn under Proposition 65. Indeed, it appears that a reasonable claim that there is a duty to warn would not arise until concentrations reached 5 ppm lead." Here, the highest lead concentrations alleged in the complaint

---

[6]    L'Oreal calculates, based on the allegations of the Complaint and judicially noticeable information, that candy at .1 ppm/lead will yield a much higher daily dose than lead at the highest level allegedly found in lipstick by a factor of approximately 46 times. (See Exhibit G)

[7]    California Health & Safety Code §§25249.5 *et seq.* Proposition 65 is widely regarded as the strictest "warnings" statute in the United States. It prohibits persons doing business from knowingly and intentionally exposing any individual to a "chemical known to the State of California to cause cancer or reproductive toxicity without first giving a clear and reasonable warning."

[8]    For example, the Attorney General noted tubes of lipstick have an average weight of .14 oz, and will usually last from one to several months.

[9]    The "No Observable Effect Level" is the maximum dose level at which a chemical has no observable reproductive effect. 22 Cal. Code Regs., Title 22, § 12801(c).

were .5-.6 ppm – *roughly ten times lower* than the amount the Attorney General thought could plausibly trigger a duty to warn, and roughly *10,000 times lower* than the NOEL.

## II.    ARGUMENT

### A.    Plaintiff's Complaint Suffers Multiple Defects and Does Not State a Cause of Action Plausible on Its Face

Plaintiff's complaint must fail because each cause of action fails to state a claim upon which relief can be granted, and because she has alleged facts that render her claim speculative and implausible.

In the first instance, this Court may properly dismiss a claim where it fails to state a claim for relief. Fed . R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Here, each count set forth in the Complaint contains legal flaws that render it insufficient to state a claim.

As an additional matter, the complaint alleges facts that demonstrate that Plaintiff simply does not have a claim, as the negligible levels of lead in lipstick do not support her causes of action. In *Bell Atlantic Corp. v. Twombley*, ___ U.S. ___, 127 S. Ct. 1955 (2007), the Supreme Court upheld the district court's dismissal of the plaintiffs' complaint for failure to allege facts sufficient to state a claim that was "plausible on its face." *Id.* at 1974.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65.[10] *See, also, Limestone Development Corp., v. Village of Lemont, IL*, 520 F. 3d 797, 802-804 (7th Cir. 2008) (greater degree of fact pleading required in cases involving complex issues or having an "*in terrorem*" effect.) The Court stated that "a conclusory allegation of [an element of the claim] at some unidentified point does not supply facts adequate to show illegality." *Id.* at 1966. In *Bell Atlantic*, the Supreme Court affirmed the trial court's dismissal of an antitrust complaint where allegations of parallel conduct were consistent with independent actions in response to market conditions, as opposed to a conspiracy in restraint of trade. Similarly, here, Plaintiff has pled facts that demonstrate the lack of any plausible health consequence associated with lead in lipstick. Plaintiff uses many conclusory allegations like "unsafe" and "dangerous," but her factual allegations belie these adjectives. The levels of lead in lipstick yield much lower exposures than those regarded as safe for small children who eat candy on a daily basis.

**B.    Plaintiff Has Failed to State a Claim for Violation of the Illinois Consumer Fraud Act**

*1)    The Elements of a Claim Under the Illinois Consumer Fraud Act*

In order to state a claim under the Illinois Consumer Fraud Act ("ICFA"), a plaintiff must allege

> (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception.

*Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002). Here, plaintiff cannot establish a claim because she has not sustained actual damages, and because she has not adequately alleged a deceptive act or practice.

---

[10]    The Supreme Court had previously had held that a pleading is sufficient "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957). In supplanting that standard, the Supreme Court held in *Bell Atlantic* that: "*Conley's* 'no set of facts' language "has been questioned, criticized, and explained away long enough." *Bell Atlantic*, 127 S. Ct. at 1969 ("after puzzling the profession for 50 years, this famous observation has earned its retirement").

2)    *Plaintiff Has Not Sustained Actual Damage*

A private right of action under the ICFA exists only in favor of one who has sustained "actual damage." 815 ILCS 505/10a(a). Actual damage means a pecuniary loss, but plaintiff has not alleged any facts to demonstrate that she has sustained a pecuniary loss. She merely seeks restitution of her purchase price based on her assertion that she would not have purchased the lipstick had she known that L'Oreal's products contained lead; and the costs of medical monitoring when her complaint fails to disclose a factual basis for such damages. (¶ 54)

i)    *Plaintiff Has Not Pled Facts to Permit the Recovery of Her Purchase Price*

Plaintiff seeks recovery of the price she paid for L'Oreal lipstick, but the allegations of her complaint in no way suggest that the lipstick failed to perform the functions of lipstick, caused her physical injury, or did not have an economic value commensurate with the price she paid. She has not alleged that the lipstick had a market value of $0 or that she incurred any extra expense as a result of its failure to conform to her expectations.

The Illinois Supreme Court has recently confirmed that "actual damage" means an actual economic loss. In *Avery v. State Farm*, 216 Ill. 2d 100, 195-199 (2005), the court concluded that plaintiff could not maintain a claim under the ICFA where he sold his vehicle for the same price it would have had absent allegedly inferior replacement parts that he received by virtue of the ICFA violation:

> The language of the Consumer Fraud Act is plain. [A plaintiff] must prove "actual damage" before he or she can recover under the Act. That did not occur here. [Plaintiff's] own testimony establishes that, when he sold his truck to his brother in law, he received the same value for the truck that he would have received if only OEM parts were used in the repair. It simply made no difference that non-OEM parts were present on the truck. Clearly [plaintiff] suffered no "actual damage" as a result of [defendant's] specification or use of non-OEM parts and, therefore, he cannot recover under the Act.

*Id.* at 196-197. Where a plaintiff has received a product with a market value equal to or greater than what she paid, she has not sustained actual damage. *Mulligan v. QVC, Inc.*, 2008 WL 1990450, *6-*7 (1st Dist. May 7, 2008) *See, also, Price v. Philip Morris*, 219 Ill. 2d 182, 281 (2006) (J. Karmeir, concurring) (Rejecting claim that light cigarette purchasers sustained actual damages because light cigarettes did not confer a promised health benefit, where there was no evidence that cigarettes were actually worth less than about plaintiffs paid for them. Purpose of the benefit of the bargain rule is to compensate plaintiff for the amount he is "actually out of pocket by reason of the transaction. If a plaintiff cannot prove he is any worse off financially as a result of defendants' deceit, his personal feelings of disappointment or dissatisfaction are of no consequence."); *Verb v. Motorola*, 284 Ill. App. 3d 460 (1st Dist. 1996) (plaintiffs failed to state a claim for damages based on allegation that cell phones might not be safe, were of lesser value, and that refunds should be given based on alleged safety concerns.)

In seeking recovery of her purchase price, Plaintiff mistakenly equates a claim for restitution with a claim for "actual damage," but these are distinct concepts: the former restores to plaintiff a defendant's unjust gain, while the latter restores what plaintiff is actually out of pocket. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 257-258 (2004); *Martin v. Allstate Insurance Co.*, 92 Ill. App. 3d 829, 835 (1st Dist. 1981) (Measure of damages for fraud is determined by loss to the plaintiff rather than gain to the defendant.) The ICFA permits the State to seek restitution on behalf of state residents, 815 ILCS 505/7(a), but gives a private right of action only to those who have sustained "actual damages." It does not specifically recognize a private right to restitution. 815 ILCS 505/10a(a). Plaintiff's complaint discloses no actual economic loss, only a request for restitution. Consequently, her claim must fail.

ii)    *Plaintiff Is Not Entitled to Medical Monitoring Damages*

Plaintiff asserts that medical monitoring expenses qualify as "actual damage" (¶ 54) but she does not purport to have spent a dime on medical monitoring. The Illinois Supreme Court has not addressed the recoverability of medical monitoring costs, or whether such costs can only be recovered where accompanied by a present physical injury. See, e.g., *Jensen v. Bayer*, 371 Ill. App. 3d 682, 692-693 (1st Dist. 2007) (noting that the Illinois Supreme Court has not recognized a claim in the absence of present physical injury.) This Court has predicted that the Illinois Supreme Court would recognize such damages in the absence of physical injury. *Carey v. Kerr-McGee Corp.*, 999 F. Supp. 1109 (N.D. Ill. 1998). *See, also, Lewis v. Lead Industries Ass'n*, 342 Ill. App. 3d 95 (1st Dist. 2003). Regardless of how the Illinois Supreme Court eventually rules on this issue, Plaintiff has not pled facts to support a claim for medical monitoring.

In states that have recognized claims for medical monitoring, courts have permitted an award of such damages only in narrow circumstances. For example, in *In re Paoli*, 916 F.2d 829 (3d Cir. 1990), the Court established four perquisites:

1.  Plaintiff was significantly exposed to a proven hazardous substance through the negligent actions of the defendant.

2.  As a proximate result of exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease.

3.  That increased risk makes periodic diagnostic medical examinations reasonably necessary.

4.  Monitoring and testing procedures exist which make the early detection and treatment of the disease possible and beneficial.

*Id.* at 852. Other courts have adopted similar restrictions, including requirements that the medical monitoring be in excess of that which the plaintiff would otherwise receive, and be proven to a reasonable medical certainty by competent expert testimony. See, e.g., *Redland Soccer Club v. Department of the Army*, 696 A. 2d 137, 145-146 (Pa. 1997); *Potter v. Firestone*, 6 Cal. 4th 965,

10

1009 (1993); *Hansen v. Mountain Fuel Supply Co.*, 858 P. 2d 970, 979-981 (Utah 1993); *Ayers v. Township of Jackson*, 106 N.J. 557, 606 (1987).

Here, plaintiff has not pled facts that meet the criteria for medical monitoring. For example, she has not pled that she, personally, has had a significant exposure to lead. (See ¶¶ 7, 11, 22, 33, 35). She has not alleged that she faces a significantly increased risk of contracting a serious latent disease. (See ¶¶ 7, 35). She does not claim to have incurred any expense yet. And her own allegations as to the concentrations of lead in lipstick, coupled with her estimate of how much lipstick women consume, demonstrate the implausibility of a claim for medical monitoring. Trace levels of lead in lipstick yield a lesser lead dose than contemplated by the FDA's standard for candy – a standard that Plaintiff acknowledges is safe.

### 3)    *Plaintiff Has Not Alleged a Violation of the ICFA*

Even if Plaintiff had sustained "actual damages," her claim would still fail because she has not properly alleged a violation of the statute.

#### i)    *Plaintiff Has Not Pled Her Claim in Conformity With Rule 9(b)*

Plaintiff has not pled her claim with the specificity required by Fed R. Civ. P. 9(b). The Seventh Circuit has interpreted Rule 9(b) to require that plaintiff state "the identity of the person making the misrepresentation, the time place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Banker's Trust Co. v. Old Republic Ins. Co.*, 959 F. 2d 677, 683 (7th Cir. 1992). With respect to omissions, a plaintiff must plead "the type of facts omitted, the type of document in which they should have appeared, and the way in which their omission made the document misleading." *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 814 F. Supp. 720, 727 (N.D. Ill. 1993).

Here, Plaintiff variously alleges that L'Oreal marketed its product as safe through both affirmative and implied representations (see, e.g., ¶¶ 3, 14, 48, 51), but she has nowhere alleged

11

specific facts to support these allegations. For example, she has not identified the content of, or supplied any specific information about, any affirmative representations. With respect to omissions, her most specific allegation is: "Plaintiff was deceived by L'Oreal [sic] material omissions in failing to disclose that the concerned lipstick products contained harmful levels of lead, because L'Oreal could not have represented the concerned lipstick products were safe had it truthfully disclosed that the products contained the complained of lead." The facts set forth in her complaint simply do not support these conclusory assertions. The levels of lead in lipstick, based on a comparison to the candy standard, simply are not "harmful," and she has nowhere identified any affirmations of safety that she heard and relied upon. Her Count under the ICFA lacks the specificity required by Rule 9(b) and therefore fails to state a claim.

### ii)    Plaintiff Has Not Identified Any Deceptive Conduct

Plaintiff's count under the ICFA must also fail because she has not identified any "deceptive act or practice." Specifically, she must plead an act of "deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of [a] material fact, with intent that another rely upon the concealment, suppression or omission of such material fact." 815 ILCS 505/2. She has not pled any specific affirmative act of deception. As to "omission with intent" she has merely asserted "[u]pon information and belief, L'Oreal knew *or should have known* of the lead in its lipstick products and the damages associated with the inclusion of lead..." (¶ 49, emphasis added.) (See also ¶ ¶25, 50, and ¶ 35 (describing L'Oreal's conduct as "negligent and reckless" rather than intentional.)) In specifically alleging what L'Oreal *should have known*, she has alleged facts that negate her right to recovery under the ICFA.

A defendant cannot "intend" that another rely on an omission, suppression or concealment if the defendant, itself, does not know of the allegedly concealed fact – here, that lipstick contains "harmful" levels of lead. "For liability to attach due to an alleged concealment, a plaintiff must

CH/281530v1

establish that the fact concealed was known to the seller at the time of concealment." *Jensen v. Bayer*, 371 Ill. App. 3d 682, 689 (1st Dist. 2007). It is also axiomatic that the alleged deceptive conduct must occur before, rather than after, the subject transaction, as the Plaintiff cannot otherwise show proximate causation. *Avery v. State Farm,* 216 Ill. 2d 100, 198 (2005). A plaintiff further may not plead "intent" based on "information and belief" unless the information is beyond her access, and even then she must plead facts to support the information and belief. *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F. 2d 677, 684 (7th Cir. 1992).

Despite these requirements, Plaintiff has not pled that L'Oreal *knew*, at the time that she purchased her lipstick, that its products contained harmful levels of lead. Her use of "or should have known" injects into her claim the type of speculation rejected by *Bell Atlantic*, and effectively states "L'Oreal either knew or it did not know." That she has based her speculation on "information or belief" further undermines her claim, as she has not alleged facts to support her "belief."

**C.    Plaintiff Has Not Stated a Claim for Breach of Warranty Under the U.C.C. or Magnuson Moss**

*1)    Lack of Privity Bars Plaintiff's Warranty Claims*

Plaintiff's second and third counts purport to state claims for breach of implied warranty under 810 ILCS 5/2-314 and the Magnuson Moss Warranty – Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 *et seq*. ("MMA").[11] Neither count can survive, however, because Plaintiff does not stand in vertical privity to L'Oreal.

Illinois continues to recognize that only a buyer in privity with a seller can maintain a claim for breach of implied warranty. *Voelker v. Porsche Cars North America*, 353 F. 3d 516, 526 (7th Cir. 2003); *Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 292 (1988). Here, Plaintiff has

---

[11]    The MMA incorporates the substantive terms of state implied warranty law, *Voelker v. Porsche Cars North America*, 353 F. 3d 516, 526 (7th Cir. 2003), 15 U.S.C. §2301(7), so L'Oreal addresses these counts simultaneously.

alleged that retailers sold the lipstick products (¶ 17), and does not allege that L'Oreal engaged in retail sales. Consequently, the breach of warranty claims must fail.

> 2)   *Plaintiff Has Not Pled a Breach of the Implied Warranty of Merchantability*

810 ILCS 5/2-314 imposes several requirements on the quality of goods, including that they be "fit for the ordinary purposes for which such goods are used." *See, also, Custom Automated Machinery v. Penda Corp.*, 537 F. Supp. 77, 83 (D. D.C. 1982). Here, plaintiff has not alleged that L'Oreal's lipsticks failed to meet her expectations as lipstick. For example, she has not alleged that it failed to coat her lips with the color and texture that she expected, that it did not last as long as she anticipated, or that she had any adverse reaction to it. Her only complaint relates to lead content, but the concentrations alleged yield far lower doses of lead than candy at the .1 ppm standard which Plaintiff concedes is safe. Therefore, the facts in her complaint negate her conclusory allegation that the lipsticks were unsafe.

> 3)   *Plaintiff Has No Damage*

Without a present injury, plaintiff cannot pursue her claims for breach of warranty. Official Comment 13 to 810 ILCS 5/2-314 provides: "In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was breached and that the breach of warranty was the proximate cause of the loss sustained." *See, also, Valenti v. Mitsubishi Motor Sales of Am., Inc.*, 332 Ill. App. 3d 969, 972-973 (1st Dist. 2002). As noted above, however, the facts plaintiff has pled do not show entitlement to medical monitoring. She also has not demonstrated any economic damage. 810 ILCS 5/2-714(b) does not provide restitution of purchase price as one of the remedies available in a claim for breach of warranty. Plaintiff also not alleged that the price she paid for the lipstick "as delivered" is anything other than the market value the lipstick would have had, at the time of acceptance, if it had been "as

warranted." Without a present loss, she cannot recover on her claim for breach of warranty. *Valenti, supra.*

### 4)    *Plaintiff's Warranty Claim Fails for Lack of Notice*

810 ILCS 5/2-607(3)(a) provides that a buyer must "within a reasonable time after he discovers or should have discovered any breach notify the seller or be barred from any remedy." Illinois has steadfastly adhered to the notice requirement. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 491-493 (1996) ("In general, buyers … must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty.") The Illinois Supreme Court has held that a defendant's generalized knowledge of third parties' safety concerns does not satisfy the notice requirement, as "it is essential that the seller be notified that *this particular transaction* is 'troublesome and must be watched.'" *Connick*, supra, at 493. *See, also, Perona v. Volkswagen*, 292 Ill. App. 3d 59, 63-65 (1st Dist. 1997) ("A federally mandated recall notice does not satisfy the U.C.C.'s notice requirement.")

Here, plaintiff has not alleged that she provided notice to L'Oreal, nor has she pled the existence of any exception to the notice requirement. Her claim must therefore fail.

### D.    **Plaintiff's Common Law Tort Claims Fail**

### 1)    *Plaintiff Has Sustained No Damage*

Plaintiff has filed two counts purportedly based on common law tort theories: Strict products liability and negligence *per se*. Both of these liability theories require that plaintiff have sustained damage. As the 7th Circuit has noted, "[n]o injury, no tort, is an ingredient of every state's law." *In re Bridgestone/Firestone, Inc.*, 288 F. 3d 1012, 1017 (7th Cir. 2002) (Citing *Yu v. International Business Machines*, 314 Ill. App. 3d 892 (Ill. App. Ct. 2000)). *See, also, Briehl v. General Motors*, 172 F. 3d 623, 627-628 (8th Cir. 1999); *Yost v. General Motors*, 651 F. Supp. 656 (D.N.J. 1986); *In re General Motors Type III Door Latch Litig.*, 2001 WL 103434, *3 (N.D. Ill. 2001); *Kirk v.*

*Michael Reese Hospital,* 117 Ill. 2d 507, 525 (1987) (negligence action requires an injury); *Verb v. Motorola,* 284 Ill. App. 3d 460, 471-473 (1st Dist. 1996) (plaintiff's claims for strict liability and negligence failed where plaintiff did not properly allege damages); *Doyle v. White Metal Rolling & Stamping Corp.,* 249 Ill. App. 3d 370, 376 (1st Dist. 1993) (Strict products claim requires an injury).

Here, Plaintiff's complaint does not reveal any compensable damage or injury. She does not claim to have sustained any physical injury. Nothing in her complaint demonstrates that she sustained any property damage through her purchase of the lipstick, or that it had an economic value other than what she paid. Similarly, the facts pled do not support a claim for medical monitoring. Her tort claims must therefore fail for lack of a present injury.

2)      *The Economic Loss Doctrine Bars Plaintiff's Tort Claims*

Even if Plaintiff were found to have alleged a claim for damages, the economic loss rule creates an impermeable barrier to her tort theories. In *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 88 (1982), the Illinois supreme court held that "[w]hen the defect is of a qualitative nature and the harm relates to the consumer's expectation that a product is of a particular quality so that it is fit for ordinary use, contract, rather than tort, law provides the appropriate set of rules for recovery." The Court has since extended the doctrine beyond the scope buyer-seller relationships, and found that the doctrine bars claims for economic damages wherever such damages do not result from physical or other direct injury. See, e.g., *City of Chicago v. Beretta*, 213 Ill. 2d 351, 416-424 (2004) (rejecting public nuisance claim brought by City to recover costs of medical expenditures and law enforcement resulting from use of handguns, and rejecting an exception to Moorman based on an "unreasonable threat to public health, safety and welfare." *Id.* at 420-421); *In re Chicago Flood*, 176 Ill. 2d 179 (1997) (doctrine applied outside of buyer-seller relationship to bar claims for purely economic loss occasioned by negligently caused flood.)

Plaintiff has not claimed to have sustained a personal injury nor property damage. Indeed, she concedes that she seeks recovery for purely economic loss under her Strict Liability Count. (¶¶ 73-74) Her purported damages relate solely to economic loss associated with her purchase of a product that disappointed her commercial expectations, and future out of pocket medical expenses. The economic loss doctrine therefore bars her claim.

### 3)    *Plaintiff Has Not Pled Facts to Support Her Strict Liability Count*

Plaintiff has alleged that L'Oreal sold unreasonably dangerous lipstick, but her factual allegations simply do not support this conclusory allegation. Rather, her complaint merely discloses that L'Oreal's lipsticks will yield a lower lead dose than that associated with the consumption of candy containing lead at a level that plaintiff agrees is safe.

### 4)    *Plaintiff Has Not Properly Pled a Count for Negligence*

Plaintiff has styled her fifth count as a claim for negligence *per se*, alleging that L'Oreal violated some unspecified section of the Food Drug and Cosmetic Act. In Illinois, negligence *per se* does not rest on a violation of a statute, but rather on an observation that certain acts or omissions "so contravene the promptings of ordinary caution that reasonable minds without doubt or hesitation would agree that no careful person would be guilty of the same." *Crowe Name Plate & Mfg. Co. v. Dammerich*, 279 Ill. App. 103, 107 (4th Dist. 1935). A statutory violation, by contrast, merely creates a prima facie showing of negligence, and even then, only where the law was designed to protect a class of persons of which plaintiff is a member, and the violation of the statute proximately caused the injury. *Martin v. Ortho Pharmaceutical*, 169 Ill. 2d 234, 240 (1996) (FDCA does not allow a private right of action, and violation of a federal regulation promulgated under it could not create a duty to warn patient where no such duty existed under Illinois law); *Batteast v. Wyeth Laboratories, Inc.*, 137 Ill. 2d 175, 193 (1990) (failure to comply with federal statute could be

relevant to whether pharmaceutical company complied with common law duty to warn physicians, but the regulations related to drug efficacy, not safety, and could not support a negligence claim.)

Here, plaintiff's conclusory allegations have not identified any specific statute that L'Oreal has violated; have not alleged that the statute was designed to prevent the type of harm (purely economic) for which she seeks recompense; or that she, by virtue of being a purchaser, belongs to the class protected by the FDCA. And, of course, her allegations regarding the trace concentrations of lead in lipstick do not show that L'Oreal sold an adulterated product, much less that L'Oreal acted negligently *per se*.

### E.    Plaintiff Has No Claim for Unjust Enrichment

Plaintiff seeks disgorgement of all amounts by which L'Oreal was "unjustly enriched." As noted above, however, her claim under the ICFA fails, and so to must this derivative count. *Mulligan v. QVC, Inc.*, 2008 WL 1990450, *9 (1st Dist., May 7, 2008) (where consumer fraud count fails, so too must claim for unjust enrichment, as unjust enrichment does not constitute a separate cause of action.) *See, also, Oshana v. Coca-Cola Co.*, 472 F. 3d 506, 515 (7th Cir. 2006) (no claim for unjust enrichment without proof of deception).

### F.    Plaintiff Lacks Standing to Seek Injunctive Relief

In her final count, plaintiff asserts that 21 U.S.C. § 332 bestows jurisdiction on this Court to enjoin a practice deemed a "prohibited act" under 21 U.S.C. § 331. Plaintiff, however, has no standing to seek such injunctive relief. The Food, Drug and Cosmetic Act does not create a private right of action, *Martin v. Ortho Pharmaceutical*, 169 Ill. 2d 234, 240 (1996); *Fiedler v. Clark*, 714 F. 2d 77 (9th Cir. 1983); *Solvay Pharmaceuticals v. Global Pharmaceuticals*, 298 F. Supp. 2d 880 (D. Minn. 2004), and 21 U.S.C. § 337(a) provides that all "proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."

## III.    <u>CONCLUSION</u>

Wherefore, for the above stated reasons, L'Oreal respectfully requests that this Court dismiss Plaintiff's Complaint and each cause of action therein.

Respectfully Submitted,

**SEDGWICK, DETERT, MORAN & ARNOLD LLP**

By:_____s/ Anthony J. Anscombe_____
    One of the Attorneys for Defendants

Anthony J. Anscombe ARDC# 6257352
C. Kinnier Lastimosa ARDC# 6277860
SEDGWICK, DETERT, MORAN & ARNOLD LLP
One N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 641-9050
Facsimile: (312) 641-9530