## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DON'S FRYE, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiffs | ) ) |
| vs. | ) No: 08 C 213 ) Judge Gettleman ) Magistrate Judge Denlow |
| L'OREAL SA, FRANCE, a French Corporation and L'OREAL USA, INC., a New York Corporation | ) ) ) |
| Defendants. | ) ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

Page

I.      INTRODUCTION…………………………………………….....................1

II.     Statement of Facts………………………………………………….................3

III.    Defendant's Numerous Mischaracterizations and Misstatements of Fact………………5

IV.     ARGUMENT……………………………………………….………..6

V.      Defendant's Failed Reliance on Judicial Notice…………………………….................7

VI      Plaintiff has Stated a Claim for Relief Under the ICFA…………………………………9

       1.      Plaintiff has Alleged Defendant's Deceptive Act………………………….………11

              A.      The Illinois Consumer Fraud Act Can Be Based on the Omission of a Material Fact……………………………………….................11

              B.      Plaintiff Has Sufficiently Plead The Elements Needed For A ICFA Action………………………………………………….................12

VII.    Plaintiff Should be Allowed to Pursue Medical Monitoring as Part of Her Damages……………………………………………………………….16

VIII.   Plaintiff Properly Plead Privity……………………………………………..19

IX.     Plaintiff Pleads a Claim for The Implied Warranties of Merchantability For both The Uniform Commercial Code and The Magnuson – Moss Warranty Act………………………………………………………….20

X.      Plaintiff Satisfied the Notice Requirement for her Breach of Implied Warranty Claims……………………………………………………………….21

XI.     Plaintiff's Strict Liability Count Should Not Be Dismissed……………………………23

XII.    Plaintiff's Negligence Count Should Not Be Dismissed………………………………..25

XIII.   Plaintiff Has Properly Plead Her Unjust Enrichment Claim……………………………27

XIV.    If the Court Dismisses Any of Plaintiff's Claims, Plaintiff Should Be Granted Leave to Amend Their Complaint…………………………………………...28

TABLE OF AUTHORITIES

Page

FEDERAL CASES

*Airborne Beepers & Video, Inc. v. AT&T Mobility LLC,*
499 F.3d 663, 667 (7th Cir. 2007)................................................6

*Allgood v. General Motors Corp.,*
2005 WL 2218371 (S.D.Ind. Sept.12, 2005)................................17

*Allstate Ins. Co. v. Daimlier Chrysler,*
2004 WL 442679 at * (N.D. Ill. Mar. (2004)................................22

*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1965 (2007)................................................6, 10

*Bixby's Food Systems, Inc. v. McKay*
193 F.Supp.2d 1053 (N.D. Ill.2002)................................13

*Carey v. Kerr-McGee Chemical Corp.,*
999 F.Supp.1109, 1118 (N.D. Ill. 1998)................................17, 18, 24

*Caterpillar, Inc., v. Usinor Industeel,*
393 F.Supp.2d 659, 671 (N.D. Ill. 2005)................................19

*Cirone- Shadow v. Union Nissan of Waukegan*
955 F. Supp. 938, 944 (N.D. Ill. 1997)................................11

*Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.,*
250 F.3d 570, 575-76 (7th Cir .2001)................................9

*Collins Co., Ltd. v. Carboline Co.,*
837 F.2d 299, 301 (7th Cir.1988)................................2

*Erickson v. Pardus,*
127 S. Ct. 2197 (2007)................................6

*General Elec. Capital Corp. v. Lease Resolution Corp.,*
128 F.3d 1074, 1081 n.6 (7th Cir. 1997)................................8

*Gershegorin v. Vienna Beef Ltd,*
2007 WL 2840476 (N.D.Ill.)................................22

*Hennessy v. Penril Datacomm Networks, Inc.,*
69 F.3d 1344, 1354 (7th Cir. 1995)................................8

TABLE OF AUTHORITIES

Page

*In re McDonald's French Fries Litig.,*
    503 F.Supp.2d 953, 956 (N.D. Ill. 2007)……………………………………………..22

*In re Paoli R.R. Yard PCB Litig.,*
    916 F.2d 829, 849-50 (3rd Cir.1990)……………………………………………17,18, 24

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,*
    507 U.S. 163, 168 113 S.Ct. 1160, (1993)……………………………………………10

*Merry v. Westinghouse Electric Corp.,*
    684 F.Supp. 847, 849-852 (M.D.Pa.1988)…………………………………………..17, 18

*Muniz v. Rexnord Corp.,*
    2006 WL 1519571 pg. * 5-6 (N.D.Ill.,2006)……………………………………16, 17, 24

*Reed v. City of Chicago,*
    263 F.Supp.2d 1123 (N.D. 2003)…………………………………………………..20

*Reyes v. McDonalds Corp.,*
    2006 WL 3253579 (N.D. Ill. Nov. 8th 2006)…………………………………………1,9

*Stella v. LVMH Perfumes and Cosmetics USA, Inc.,*
    --- F.Supp.2d ----, 2008 WL 2669662  (N.D. Ill July 8, 2008)…….....2, 18, 22, 23, 25, 27

*St. John's United Church of Christ v. City of Chicago,*
    502 F.3d 616 (7th Cir. 2007)……………………………………………………………7

*Swierkiewiz v. Sorema N.A.,*
    534 U.S. 506,515, 122 S. Ct. 992, (2002)……………………………………………10

*Thompson v. Illinois Dep't of Prof'l Regulation,*
    300 F.3d 750, 753 (7th Cir. 2002)..……………………………………………....24

STATE CASES

*Avery v. State Farm,*
    216 Ill.2d 100, 195-199, 835 N.E.2d 801 (2005)………………………………...….13

*Berry v. G.D. Searle & Co.,*
    56 Ill.2d 548, 309 N.E.2d 550 (Ill.1974)………………………………………………2

*Capiccioni v. Brennan Naperville, Inc.,*
    339 Ill.App.3d 927, 933, 791 N.E.2d 553, 558 (2nd Dist. 2003)…………………….14

TABLE OF AUTHORITIES

Page

*Carl Sandberg Village Condominium Ass'n No. 1 v. 1st Condominium Development Co.,*
   197 Ill. App. 3d 948, 557 N.E.2d 246 (1st Dist. 1990)......................................13

*Chandler v. American General Finance, Inc.,*
   329 Ill.App.3d 729, 741, 768 N.E.2d 60, 70 (1st Dist. 2002)...........................10,13

*Connick v. Suzuki Motor Co. Ltd.,*
   174 Ill.2d 482, 504, 675 N.E.2d 584, 595 (1996)................................10, 11, 13, 22

*Collins Co., Ltd. v. Carboline Co.,*
   125 Ill.2d 498 516, 532 N.E. 2d 834, 842 (1988)............................................20

*Dewan v. Ford Motor Co.,*
   363 Ill.App.3d 365, 369, 842 N.E.2d 756, 760-61 (1st Dist. 2005).........................14

*HPI Clark v. TAP Pharmaceutical Products, Inc.,*
   343 Ill.App.3d 538, 550, 798 N.E.2d 123, 133 (5th Dist. 2003).............................27

*Jensen v. Bayer,*
   371 Ill.App.3d 682, 689, 832 N.E.2d 1091, 1098 (1st Dist. 2007).........................2,7

*Lewis v. Lead Industries Ass'n, Inc.,*
   342 Ill.App.3d 95,99-100 793 N.E.2d 869, 872, 873 (Ill. App. 1 Dist. 2003)...........24-26

*Lipinski v. Martin J. Kelly Oldsmobile Inc.,*
   325 Ill.App.3d 1139, 1145, 759 N.E.2d 66, 71 (1st Dist. 2001)..........................11, 14

*Martin v. Heinold Commodities, Inc.,*
   163 Ill. 2d 33, 643 N.E.2d 734 (1994).......................................................12

*Moorman Mfg. Co. v. Nat'l Tank Co.,*
   91 Ill.2d 69, 86-88, 435 N.E.2d 443, 451 (Ill. 1982)...................................23, 24

*Miller v. William Chevrolet/Geo, Inc.,*
   326 Ill. App. 3d 642, 654-55, 762 N.E.2d 1, 11,(1st Dist. 2001).......................10, 14

*Mulligan v. QVC, Inc.,*
   888 N.E.2d 1190 (Ill.App.1[st] Dist. 2008).................................................15

*Pappas v. Pella Corp.,*
   363 Ill.App.3d 795, 802, 844 N.E.2d 995, 998-99 (1st Dist. 2006)..................9, 10, 15

*Patargias v. Coca-Cola Bottling Co.,*
   332 Ill.App.3d 117, 133, 74 N.E.2d 162, 169 (1st Dist. 1947)..............................19

iv

TABLE OF AUTHORITIES

Page

*Perona v. Volkswagen of America, Inc.*,
   292 Ill.App.3d 59, 68-9(1st Dist. 1997)..................................................11

*Potter v. Firedstone Tire & Rubber Co.*
   863 P2.d 795, 822-23 (Cal. (1993)..........................................................17

*Price v. Phillips Morris,*
   219 Ill.2d 182, 281 (2006).......................................................................13

*Randels v. Best Real Estate, Inc.,*
   243 Ill. App. 3d 801, 805, 612 N.E.2d 984, 987 (2nd Dist. 1993).........................12

*Schiffner v. Motorola Inc.,*
   297 Ill.App.3d 1099, 697 N.E.2d 868 (1st Dist. 1998).....................................15

*Siegel v. Levy Org. Development Co.,*
   153 Ill. 2d 534, 542, 607 N.E.2d 194, 198 (1992).......................................12, 13

*Smith v. Eli Willy and Co.,*
   137 Ill.2d 222,  233, 560 N.E.2d 324  (Ill. App. 1st 2003)..................................26

*Suvada v. White Motors,*
   32 Il.2d 612, 618, 210 N.E.2d 182, 186 (1985).............................................19

*Totz v. Continental DuPage Acura*
   236 Ill. App. 3d 891, 901, 602 N.E.2d 1374, 1380 (1992)....................................10

*Wehmeier v. UNR Industries, Inc.,*
   213 Ill.App.3d 6, 28, 572 N.E.2d 320 (1991)................................................26

*Whitaker v. Lian Feng Machine Co.*,
   156 Ill.App.3d 316, 323, 509 N.E.2d 591, 596 (1st Dist. 1987).............................20

## FEDERAL STATUTES

Federal Rules of Civil Procedure, Rule 9(b)................................................24

Federal Rules of Civil Procedure, Rule 12(b)(6)............................................7

Federal Rules of Civil Procedure, Rule 12(c)...............................................7

Federal Rules of Civil Procedure, Rule 12(d)...............................................7

Federal Rules of Civil Procedure, Rule 56(c )..............................................9

TABLE OF AUTHORITIES

Page

15 United States Code, section 2310(d)(1)………………………………………………....20

21 United States Code, section 331(a)…………………………………………………...........20

STATE STATUTES

California Code of regulations, Title 22, §12801 (c)…………………………………………...5

California Health & Safety Code, § 25249.5, et seq. …………………………………………..5

810 ILCS § 5/2-314……………………………………………………………………....20, 21

810 ILCS § 5/2-607(3)(A)……………………………………………………………...........21

815 ILCS § 505/1 *et seq*..........…………………………………………………….……..2, 10

815 ILCS § 505/2……………………………………………………………………….9, 11, 13

MISCELLANEOUS

The Campaign for Safe Cosmetics,
    *A Poison Kiss: The Problem of Lead In Lipstick*, (October 2007)……………………….3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| DON'S FRYE, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiffs | ) ) | No: 08 C 213 |
| vs. | ) ) | Judge Gettleman |
| | ) | Magistrate Judge Denlow |
| L'OREAL SA, FRANCE, a French Corporation and L'OREAL USA, INC., a New York Corporation | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## I. **Introduction**

Defendant L'Oreal, USA, Inc.'s ("Defendant" or "L'Oreal") argument in support of its Motion to Dismiss appears to be based on their contention that many other common items contain lead and there is only trace amounts of lead in their lipstick even though it is a known hazardous substance and Defendant fails to advise consumers that it is in its products. L'Oreal USA, Inc.'s Memorandum In Support Of Motion Pursuant to Rule 12 (b)(6) ("Def. Memo.") ("Def. Memo. at 4-6).

Defendant displays a cavalier attitude toward their lack of disclosure. Defendant supports its motion by relying on the refutable substance of countless documents that are outside the pleadings and cannot properly be considered on a motion to dismiss, along with a gross misinterpretation of the well-plead allegations contained in Plaintiff's Class Action Complaint. For the reasons that follow, Defendant's motion must be denied in its entirety.

What is probably the most persuasive argument to not dismiss this case is the

recent Memorandum and Opinion in *Stella v. LVMH Perfumes and Cosmetics USA, Inc.,* --- F.Supp.2d ----, 2008 WL 2669662 (N.D. Ill July 8, 2008)(Judge Bucklo). This case has an identical fact pattern to the case at bar. Here, just like in the present case, the defendant is moving to dismiss the identical causes of action and identical fact patterns involved in this case. Judge Bucklo denied the motion to dismiss pertaining to the Illinois Consumer Fraud and Deceptive Businesses Practice Act ("ICFA"), 815 ILCS 505/1, *et. seq.* (2007); Breach Of Implied Warranty pursuant to the Uniform Commercial Code ("UCC"); Breach of Implied Warranty pursuant to the Magnuson-Moss Act ("MMA"); Strict Liability; Negligence per se; common law fraud and Unjust Enrichment. *Stella,* 2008 WL 2669662. The court did dismiss the plaintiff injunctive relief action. *Stella,* 2008 WL 2669662 at * 4.

Judge Bucklo agrees with Plaintiff's claim of actual damages "Plaintiff seeks to recover actual damages in the form of pecuniary damages). Actual damages include "pecuniary losses" which includes the cost of the lipstick and medical monitoring. *Stella,* 2008 WL 2669662 at * 2. These types of damages, especially the cost of the lipstick for an ICFA case, is a cognizable claim.

The *Stella* court also ruled "plaintiff does not seek to recover solely economic losses, which exempts plaintiff from this privity requirement. *Collins Co., Ltd. v. Carboline Co.,* 837 F.2d 299, 301 (7th Cir.1988) (privity is a requirement "only in cases of economic loss in contrast to ... personal injury claims") (citations omitted); *Berry v. G.D. Searle & Co.,* 56 Ill.2d 548, 309 N.E.2d 550 (Ill.1974); *Jensen v. Bayer AG,* 371 Ill.App.3d 682, 691, 862 N.E.2d 1091, 1099-1100 (Ill.App.Ct.2007) ("a plaintiff may be

excepted from the privity requirement by suing for personal injury") (citations omitted).

Accordingly, the motion to dismiss on this issue is denied.

Plaintiff hereby waives their arguments for injunctive relief and Common Law

Fraud. Plaintiff requests that her Common Law Fraud claim be dismissed without

prejudice. If the Court wishes, Plaintiff will amend this complaint to reflect this waiver.

## II. Statement Of Facts

Plaintiff filed her Class Action Complaint on January 9, 2008. *See* Plaintiff's

Class Action Complaint ("Complaint"), attached hereto as Exhibit 1. Plaintiff seeks to

represent a Class comprised of:

> [A]ll persons throughout the United States and its territories
> who purchased lipstick products that contained     the
> complained of lead, which were marketed, manufactured,
> and/or distributed, or placed in commerce for sale, by
> L'Oreal USA Inc. ("L'Oreal" or Defendant"), from the
> offering of sale of the concerned lipstick products to the
> present. Compl. ¶ 36.

Plaintiff purchased and used L'Oreal's Colour Riche True Red and

Colour Riche Classic Wine lipstick, which is manufactured, marketed,

and/or distributed by Defendant. Compl. ¶¶ 14-17. Plaintiff succinctly

and thoroughly lays out the allegations in support of her claims.

On October 11, 2007, the campaign for Safe Cosmetics ("CFS") revealed a study

that demonstrated Defendant's concerned lipstick products contain dangerous and

excessive levels of lead and significant higher lead counts than other lipsticks on the

market. Compl. ¶¶ 28-31. The U.S. Food and Drug Administration ("FDA") has

established a limit of 0.1 parts per million ("ppm") as the maximum allowable amount of

lead in candy, a limit established to protect individuals from directly ingesting lead.

3

Compl. ¶ 29. The results of the study revealed that Defendant's relevant lipstick product Colour Riche True Red lead level was in the amount of 0.50/0.65. The Result of the study also revealed that Defendant's Coulour Riche Classic Wine contained a 0.58 ppm. Compl. ¶ 31. Plaintiff's application of Defendant's Coulour Riche True Red and Coulour Riche Classic Wine to her lips inevitably caused the digestion of lead from the lipsticks consisting of levels of lead in the amount of 0.50/0.65 ppm or 0.58 ppm; five to six times the accepted ppm amount and the lead acceptable lead level for candy respectively. Compl. ¶¶ 31-32  These scores are also more than twice the FDA's limit on lead in candy. Compl. ¶¶ 29, 31. The concerned lipstick products contain lead at levels that are potentially dangerous for human ingestion. Compl. ¶¶ 2, 27-31. Lipstick products are ingested by way of licking one's lips, while eating, licking lips, kissing, etc. Compl. ¶ 30.

None of Defendant's concerned lipstick products revealed, through advertising, labeling, or packaging, that they contained any lead at all, let alone the levels of lead contained therein; which are unreasonably and dangerously high, and are harmful. Compl. ¶¶ 4-5. Consequently, said advertising, labeling, and packaging was misleading, inaccurate and deceptive, as Defendant omitted the material fact that harmful levels of lead were present in the concerned lipstick products. Compl. at ¶ 7, 11; 15, 47, 48, 49, 50, 51. In light of said omissions, Plaintiff and other members of the Class purchased the concerned lipstick products under the implied representation that said products were safe for ordinary use. Compl. ¶¶ 13-15. Despite Defendant's representations to the contrary, however, the concerned lipstick products are not fit for their ordinary and intended use — application to one's lips — and, as a result, Plaintiff and other members of the putative

4

Class have been improperly exposed to a known, hazardous substance. Compl. ¶ 2-7, 13-15, 34-35.

As recited many of times in her complaint, Plaintiff would not have purchased or used the concerned lipstick had she been apprised of the lead content of said lipstick. Compl.¶ 11, 21. Thus, Plaintiff seeks recovery of the purchase price of the products, including the corresponding profit from said sale, which has been unjustly retained by Defendant. Compl. ¶¶ 8, 53, 61, 69, 74, 78, 85. Moreover, due to their unknowing exposure to lead, Plaintiff and other members of the Class are at an increased risk of suffering the effects of lead poisoning, and may have already been adversely affected. Compl. at ¶¶ 7, 34. Thus, Plaintiff also seeks to recover the cost of medical monitoring, which has been necessitated by her exposure to the dangerously high levels of lead contained in Defendant's concerned lipstick products. Compl. ¶¶ 8, 53, 61, 69, 74, 78 85.

### III. Defendant's Numerous Mischaracterizations and Misstatements of Fact.

Unable to defeat Plaintiff's claims, Defendant makes a number of mischaracterizations and misstatements of Plaintiff's Complaint and the allegations as contained therein. None of the documents that have been attached to Defendant's memorandum can be properly considered here, as identified.

Defendant cites to Proposition 65, Safe Drinking Water and Toxic Enforcement Act of 1986, West's Ann. Cal. Health & Safety Code § 25249.5, et seq., and its admittedly stringent disclosure requirements. Def. Memo. at 5 fn 7. Plaintiff, however, has not brought a claim under Proposition 65. Nor has she brought a claim for reproductive problems as a result of lead under 22 Cal. Code Regs., Title 22, § 12801 (c). Def. Memo at 5 fn 9 Rather, Plaintiff has brought well-pled claims for violations of the

Illinois Consumer Fraud Act, unjust enrichment, breach of implied warranty, negligence per se, and strict liability. The provisions, standards, and requirements of Proposition 65 and other similar legislation are entirely irrelevant for purposes of addressing the sufficiency of Plaintiff's Complaint, and have no place being considered in conjunction with Defendant's motion to dismiss.

Finally, Defendant makes the monotonous argument that plaintiff contends there is no safe level of lead in lipstick at all, arguing that even the slightest trace of lead in lipstick renders it dangerous and defective. Def. Memo. at 3-4. Defendant fails to cite the portion of Plaintiff's Complaint that makes this contention. This is of no surprise because no portion of Plaintiff's Complaint makes this outrageous allegation. What Plaintiff does contend, however, is that the levels of lead in Defendant's lipstick products are unreasonably and dangerously high, a fact which forms the underlying foundation of her Complaint. It is that truthful proposition that Defendant seeks to avoid by its mischaracterization and sophistry.

### III. ARGUMENT

"[A]t some point the factual detail in a complaint maybe so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) (analyzing the holdings of *Bell Atlantic v. Twombly*, 127 S. Ct. 1965 (2007) and *Erickson v. Pardus*, 127 S. Ct. 2197 (2007)). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1935 (2007). Although this does "not require heightened fact pleading of specifics," it does require the complaint to contain

"enough facts to state a claim to relief that is plausible on its face." *Id. at 1974; see also St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616 (7th Cir. 2007).

## IV. **DEFENDANT'S FAILED RELIANCE ON JUDICIAL NOTICE**

Defendant begins its memorandum in support of its motion to dismiss with references and citations to the disputable substance of several documents and reports it attached to its memorandum, matters that are entirely outside improperly the pleadings in this matter. Unfortunately, Defendant's attempt to do so effectively converts its motion to dismiss into a motion for summary judgment, should the Court elect to consider said documents. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The documents attached by Defendant that qualify as matters "outside the pleadings" include:

(A) ASTR Division of Toxicology and Environmental Medicine Public Health Statement about lead, August 2007;

(B) The Campaign for Safe Cosmetics; A Poison Kiss: "The Problem Of Lead In Lipstick," October 2007;

(C) U.S. Food and Drug Administration, "Lipstick and Lead: Questions and Answers," December, 2007;

(D) FDA Center for Food Safety and Applied Nutrition Guidance Document, "Lead in Candy Likely to be Consumed Frequently by Small Children: Recommended Maximum Level and Enforcement Policy," Nov. 2006;

(E) FDA, "Supporting Document For Recommended Maximum Level for Lead In Candy Likely To Be Consumed Frequently By Small Children," November 2006;

7

(F) FDA "Detention Without Physical Examination of Candy Due to Lead," April, 2008;

(G) "Comparisons Of Lead Exposures Attributed To Candy At .1 PPM And Lipstick At An Alleged Concentration Of .65 PPM,";

(H) CDOJ Opinion Letter (Mar. 3, 2008). (See all of Defendant's exhibits).

Consequently, should the Court choose to accept and allow the above-listed documents to be considered here, than the Court must necessarily convert Defendant's motion to dismiss into a motion for summary judgment.

Defendant's attempt to rely on judicial notice is based upon a flawed interpretation of what matters a court can properly take judicial notice of. "Judicial notice is premised on the concept that certain facts or propositions exist which a court may accept as true without requiring additional proof from the opposing parties. It is an adjudicative device that substitutes the acceptance of a universal truth for the conventional method of introducing evidence." *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 n.6 (7th Cir. 1997). Additionally, "[i]n order for a fact to be judicially noticed, indisputability is a prerequisite." *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995). While a court may take judicial notice that an administrative body made findings, the doctrine does not allow the court to conclude that those findings are actually indisputable facts.

As a result, the above-referenced documents should not be considered by the Court when deciding Defendant's motion to dismiss, and should thus be stricken. Alternatively, should the Court deem it appropriate to accept and consider said documents, than Defendant's motion must necessarily be converted into a motion for

summary judgment.[1]    Summary judgment would only be proper where "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(c). Given that Defendant takes issue with nearly *every* material fact relied upon by Plaintiff, even under this standard, summary judgment and, thus, dismissal, would still be inappropriate. This directly conflicts with the concept of a motion to dismiss.

## V.  PLAINTIFF HAS STATED A CLAIM FOR RELIEF UNDER THE ILLINOIS CONSUMER FRAUD ACT

The ICFA prohibits the "misrepresentation or the concealment, suppression or omission of any material fact" in the course of commerce. 815 ILCS § 505/2. In order to state a claim for violation of the ICFA, plaintiffs must allege that: (1) defendants engaged in a deceptive act or practice; (2) defendants intended that plaintiffs would rely on the deception; (3) the deception occurred in the course of conduct involving trade and commerce; (4) plaintiffs were injured; and (5) defendants' conduct proximately caused plaintiffs' injury. *Reyes v. McDonalds Corp.,* 2006 WL 3253579 (N.D. Ill. Nov. 8th 2006); *See also, Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.,* 250 F.3d 570, 575-76 (7th Cir .2001). Actual reliance is not required to establish a claim under the CFA. *Cozzi,* 250 F.3d at 576 (reversing district court dismissing a claim for lack of detrimental reliance). Neither "defect" nor "unreasonably dangerous" are necessary elements of a Consumer Fraud Act claim. *Pappas v. Pella Corp.,* 363 Ill.App.3d 795, 802, 844 N.E.2d 995, 998-99 (1st Dist. 2006). For a claim based on an omission, plaintiffs are required only to allege an omission of a "material fact" in the course of trade or commerce." *Id.*

---

[1] Nevertheless, a motion for summary judgment would be premature at this junction, as no discovery has taken place yet.

When the plaintiff alleges consumer fraud bases on the concealment of facts, or

omissions, a plaintiff need only allege he relied on the defendant's concealment by

silence. *Pappas*, 363 Ill.App.3d at 804, 844 N.E.2d at 1002-03. "Requiring anything

more would eviscerate the spirit and purpose of the Consumer Fraud Act. *Pappas*, 363

Ill.App.3d at 805, 844 N.E.2d at 1002-03.

      Plaintiff correctly plead all of the elements needed under the Illinois Consumer

Fraud and Deceptive Practices Act. 815 ILCS 505/1 et seq. While plaintiff must show

that the fraud was a proximate cause of an injury, "the required allegation of proximate

cause is minimal since that determination is best left to the trier of fact." *Connick v.*

*Suzuki Motor Co. Ltd.,* 174 Ill.2d 482, 504, 675 N.E.2d 584, 595 (1996); *Chandler v.*

*American General Finance, Inc.*, 329 Ill. App. 3d 729, 736, 768 N.E.2d 60, 66 (1st Dist.

2002) ("The Consumer Fraud Act does not require actual reliance by the plaintiff on a

defendant's deceptive act or practice.")

    Furthermore, the Consumer Fraud Act provides "'a clear mandate to the Illinois courts

to utilize the Act to the greatest extent possible to eliminate all forms of deceptive or

unfair business practices and provide appropriate relief to consumers.' *Totz v.*

*Continental DuPage Acura,* 236 Ill. App. 3d 891, 901, 602 N.E.2d 1374, 1380 (1992).

As has often been noted, the Act is to be construed liberally to affect its purposes." *Miller*

*v. William Chevrolet/Geo, Inc.,* 326 Ill. App. 3d 642, 654-55, 762 N.E.2d 1, 11,(1st Dist.

2001) (citations omitted).[2]

---

[2]  Defendant's reliance on *Bell Atlantic Corp. v. Twombley,* _ U.S._, 127 S.Ct. 1955 (2007) is beyond
misleading. First, *Bell Atlantic Corp.* is an antitrust case involving the price fixing of phone companies. *Id.*
Moreover, the Court stated "In reaching this conclusion, we do not apply any "heightened" pleading
standard, nor do we seek to broaden the scope of Federal Rule of Civil Procedure 9, which can only be
accomplished "'by the process of amending the Federal Rules and not by judicial interpretation.
Interpretation'" *Id.* at 1973; *quoting Swierkiewiz v. Sorema N.A.,* 534 U.S. 506,515, 122 S. Ct. 992, (2002);

1. **PLAINTIFF HAS ALLEGED DEFENDANT'S DECEPTIVE ACT**

   A. **The Illinois Consumer Fraud Act Can Be Based On The Omission Of A Material Fact.**

A violation of the ICFA can be based upon an omission of a material fact. 815 Ill. Comp. Stat. 505/2. ("A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information on which a buyer would expect to rely in making a decision [regarding] whether to purchase the product.") *Lipinski v. Martin J. Kelly Oldsmobile Inc.*, 325 Ill.App.3d 1139, 1145, 759 N.E.2d 66, 71 (1st Dist. 2001); *quoting Perona*, 292 Ill.App.3d at 67-68, 684 N.E.2d at 866[3]; *See also Connick*, 174 Ill.2d at 504-05, 675 N.E.2d at 595; Complaint ¶ 44. Whether something is material is measured by an objective "reasonable person" standard, negating the need for inquiry into absent class members' judgments in purchasing the relevant product in circumstances where the defendants omitted material information about their own product. *See Cirone- Shadow v. Union Nissan of Waukegan*, 955 F. Supp. 938, 944 (N.D. Ill. 1997).

---

(*quoting Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 113 S.Ct. 1160 (1993)). The Court continues "here, in contrast, we do not require heightened fact pleading of specifics but only enough facts to state a claim of relief that is plausible on its face." *Bell Atlantic Corp.*, 127 S.Ct. at 1974. The above analysis negates Defendant's interpretation of the case and may even in fact support Plaintiff's own position.

[3] When this case was on appeal the 1st district ruled: "...plaintiffs adequately alleged a consumer fraud violation based on a material omission by Audi. First, plaintiffs alleged that Audi was aware of the Audi 5000's safety problems, including its tendency to accelerate unintentionally. Attached to the complaint were two press releases issued by Audi acknowledging the existence of excessive unintended accelerations of the Audi 5000 automobile. The safety recall affected 117,000 vehicles and is in response to reports that drivers inadvertently have Plaintiffs further alleged that Audi failed to disclose these defects. Finally, plaintiffs alleged that the unintended acceleration was a material fact in that they would not have purchased their Audi 5000 automobiles if Audi had previously disclosed the safety risk. Those allegations alone are sufficient as they apply to Audi 5000s purchased before the two press releases were issued by Audi." *Perona v. Volkswagen of America, Inc.*, 292 Ill.App.3d 59, 68-9(1st Dist. 1997).

Here, two aspects of materiality exist. First, Plaintiff alleged that she would have not purchased the product had she known of the omission of material fact and the inclusion of lead in a product that is ingested or absorbed poses severe risks to one's health. Comp. ¶¶ 4, 11, 51- 54. In other words, Defendant was under a duty to disclose the presence of lead in their products to consumers. This constitutes the deception under the act.

### B. Plaintiff Has Sufficiently Plead The Elements Needed For A ICFA Action

In this action, Plaintiff alleges that as the manufacturer of the lipstick, Defendant knew or should have known that lead was an ingredient and that it failed to disclose this fact to consumers in listing its products ingredients.[4] Moreover, if Plaintiff knew of such ingredients as a consumer, she would not have purchased Defendant's products. This omission directly caused Plaintiff's entitlement to pecuniary damages. She should also receive damages because of the need for medical monitoring due to the products' lead content.

---

[4] The issue of whether Defendant actually knew of the presence of lead in its lipstick products is a matter that can be dealt with through discovery. Defendant's reliance on *Jensen* misguided. *Jensen v Bayer,* 371 Ill.App.3d 682, 689, 832 N.E.2d 1091, 1098 (1st Dist. 2007). *Jensen* was a decision involved the defendant's motion for summary judgment. Here, the issue at bar is a motion to dismiss. The *Jensen* court even noted, "[o]n a motion for summary judgment, plaintiff must produce some evidence in favor of its claim." *Id* In all probability, the discovery process would uncover and demonstrate Defendant's unlawful actions. Plaintiff has a right to pursue this avenue and a motion to dismiss should not interfere with this process. Thus Defendant is using the wrong motion with the wrong standards in an attempt to terminate this lawsuit.

Nevertheless, at this point in the litigation, Plaintiff has not been given the opportunity to present any evidence regarding Defendant's knowledge of the presence of lead in its lipstick products, and on a motion to dismiss, the sufficiency of evidence is not at issue. Rather, the issue is whether Plaintiff's Complaint states a valid claim-it does. Furthermore, there is a presumption that a corporation or movant knows of the substances in the products it manufactures, and Defendant cannot ignore the principles of this basic concept. If Defendant's interpretation were true, the vast majority of legal claims would be dismissed. Defendant further contends that it has done nothing to affirmatively or implicitly assure customers that their lipstick products are safe to use. However, Defendant has indeed done just that-it sold the concerned lipstick products without disclosing the fact that said lipsticks contained unreasonably high levels of lead at all.

It is crucial to note, again, a plaintiff need not prove that he or she relied on the deception to state a claim under the ICFA. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 643 N.E.2d 734 (1994); *Siegel v. Levy Org. Development Co.*, 153 Ill. 2d 534, 542, 607 N.E.2d 194, 198 (1992); *Randels v. Best Real Estate, Inc.*, 243 Ill. App. 3d 801, 805, 612 N.E.2d 984, 987 (2ⁿᵈ Dist. 1993). Furthermore, Plaintiff need not prove actual or reasonable reliance on the deceptive representation. *Bixby's Food Systems, Inc. v. McKay*, 193 F.Supp.2d 1053 (N.D. Ill.2002). The focus of the term "reliance" is on the deceptive conduct of the defendant, not upon the conduct or "reliance" of the plaintiff. (815 ILCS 505/2 (2000)) ("…unlawful whether any person has in fact been misled, deceived, or damaged thereby.") Intent to deceive is also not a required element of CFA claim. *Carl Sandberg Village Condominium Ass'n No. 1 v. First Condominium Development Co.*, 197 Ill. App. 3d 948, 557 N.E.2d 246 (1st Dist. 1990). All that is required is that defendant intended that others rely upon the representation as opposed to requiring proof that defendant intended to deceive. *Siegel v. Levy Org. Development Co.*, 153 Ill. 2d 534, 542, 607 N.E.2d 194 (1992).[5]

While reliance is not required, a "plaintiff must demonstrate, however, the defendant's consumer fraud proximately caused his injuries. Under the Proximate cause element, Plaintiff must demonstrate the defendant's wrongful actions proximately caused his injuries. *Connick*, 174 Ill.2d at 501, 675 N.E.2d at 593.The required allegation of

---

[4] Defendant's reliance on *Price v. Phillips Morris* is also misleading. 219 Ill.2d 182, 281 (2006). Here, the plaintiffs attempted to sue under the ICFA because they were mislead to believe that light cigarettes were better for a person health. The general public knows the truth about the health risks of smoking. Also, this may be an omission but it is not true. Moreover, the word "light" is not necessarily deceiving with the particular fact pattern. *Id. Avery v. State Farm*, 216 Ill.2d 100, 195-199, 835 N.E.2d 801 (2005) does not apply to this case as well. Unlike *Avery*, Plaintiff has no market for resale for her lipstick. There the car had a market and there was no differential for he could get from the car with or with the potential remedy.

proximate causation is minimal, because that determination is best left to the trier of fact." *Chandler v. American General Finance, Inc.*, 329 Ill.App.3d 729, 741, 768 N.E.2d 60, 70 (1st Dist. 2002) (internal citations omitted). The precise contours of proximate causation in a consumer fraud cause have not been defined but, as discussed above, it is clear that actual reliance is *not* required. *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill.App.3d 927, 933, 791 N.E.2d 553, 558 (2nd Dist. 2003); *see also Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 656, 762 N.E.2d 1, 12-13, 260 Ill. Dec. 735 (1st Dist. 2001) (discussing proximate cause under the ICFA). The requirements of an ICFA claim have always been held to be less than that of common law fraud where reliance is required. *See Lipinski*, 325 Ill. App. 3d at 1144, 759 N.E.2d at 70.

In this case, Defendant nondisclosure or omission was what induced the Plaintiff to purchase the lipsticks in the first place. If the lead content was represented, Plaintiff would not have purchased Defendant's relevant products. Comp. ¶¶ 50-54. Moreover, Defendant manufactured, marketed and placed the concerned cosmetic products into commerce. Accordingly, Defendant's deception proximately caused Plaintiff's injuries.

Economic damages are available to every putative class member under the Illinois consumer fraud act and under the consumer fraud acts of the other states in the class. *See, e.g., Dewan v. Ford Motor Co.,* 363 Ill.App.3d 365, 369, 842 N.E.2d 756, 760-61 (1st Dist. 2005); ("[t]he diminished value of a product due to defects associated with the product is a compensable injury in consumer fraud causes of action..." where the value of car was allegedly diminished due to defective front interior light sensors even though the defect was corrected); *See also Lipinski v. Martin J. Kelly Oldsmobile, Inc.,* 325 Ill.App.3d 1139, 759 N.E.2d 66 (1st Dist. 2001) (seller of car allegedly concealed defect

that resulted in the excessive oil consumption and cause[d] severe damage to the engine from insufficient oil). A defect could fall well short of the "unreasonably dangerous" standard yet still be serious enough that a reasonable buyer would not purchase the product if made aware of the defect. "An omission need not concern potential bodily harm. The Consumer Fraud Act provides remedies for omissions resulting in purely economic injury... [t]he diminished value of a product due to defects associated with the product is a compensable injury in consumer fraud." *Papas*, 363 Ill.App.3d at 802, 884 N.E.2d at 1001-02.[6] In *Schiffner v. Motorola Inc.*, another consumer fraud case alleging diminution in the value of cellular telephones. 297 Ill.App.3d 1099, 697 N.E.2d 868 (1st Dist. 1998). In *Schiffner*, cellular phone user's allegations were that he had been damaged by the diminished value of their phones due to defects associated with the phones were sufficient to state compensable injury, as required to maintain consumer fraud and breach of warranty claims against manufacturer. *Id.*[7]

Plaintiff has sufficiently alleged the Defendant knew or should have known that the relevant lipstick products contained lead, yet failed to disclose this fact to the Plaintiff and the putative class. Compl. ¶ 49. Such conduct is clearly deceptive, exceeding the statutory requirements. As a direct result of Defendant's conduct, Plaintiff suffered and

---

[6] This contention should not negate the dangerous elements to this case and the personal injury claim.

[7] *Mulligan v. QVC, Inc.*, also does not support Defendant's argument. 888 N.E.2d 1190 (Ill.App.1st Dist. 2008). The plaintiff lacked standing because she continued to use the identical services provided by the defendant. Also, the plaintiff cause of action revolved around Mulligan alleged that QVC's listed an overstated "retail value" for the prevailing market price for certain products it sold and falsely created the impression that consumers were receiving a bargain by purchasing at lower amount than the defendant's prices." *Id.* at 259. However, the plaintiff received by far the lowest price for the concerned item in dispute in the entire market place. *Id.* This decision was also a Motion for Summary Judgment more importantly In this case the Plaintiff continued to buy products from the defendant's network, even though this was the same network she claimed deceived her under the lawsuit.

now seeks pecuniary damages (the cost of the lipstick) and medical monitoring for the putative class. Furthermore, *Stella* agreed with the Plaintiff's argument. Compl. ¶¶ 49-54.

Here, the plaintiff has alleged each element of a claim. First, plaintiff alleges that the defendant engaged in a deceptive act or practice by omitting the fact that its lipstick, as sold contained a dangerous and unreasonable amount of lead. Compl.¶¶.48-54. Second, Plaintiff alleges that Defendant's misrepresentations and/or omissions were made with the intent that Plaintiff and other purchasers would rely on them and purchase its Lipsticks. Third, Plaintiff alleges that Defendant omitted material facts in the course of trade or commerce by disseminating such misrepresentations in advertisements, catalogs, brochures, instructions, labels and packaging distributed throughout the United States. Compl. ¶¶ 6, 47-48.

Finally, Plaintiff alleges that as a proximate result of Defendant's omissions, she was damaged in the amount she paid to purchase the lipstick. As a result of these elements, Plaintiff is entitled to, at the very least, economic damages. They are also entitled to, but not limited to, the cost for medical monitoring, treble damages and other appropriate remedies.

Accordingly, Plaintiff has plead every necessary element of a claim, thus dismissal would be improper.

## VI. <u>Plaintiff Should be Allowed to Pursue Medical Monitoring as Part of Her Damages</u>

The Plaintiff is entitled to medical monitoring as actual damages. Plaintiff alleges that Defendant knew or should have known that their product contained lead and the amount of lead was reasonable to disclose to consumer. Compl. ¶¶ 7, 35. Defendant did

not disclose this information to the consumers at large. Plaintiff alleges she would not

have purchased Defendant's product. A reasonable and foreseeable prayer for damages

does and can include medical monitoring. "Because diseases and injuries caused by

exposure of toxic substances are often latent, relief in the form of medical monitoring has

developed as a means to compensate plaintiffs that have been wrongfully exposed to

various toxic substances and require medical testing because of that exposure." *Muniz v.*

*Rexnord Corp.,* WL 1519571 *5 (N.D. Ill. 2006); *See In re Paoli R.R. Yard PCB Litig.,*

916 F.2d 829, 849-50 (3rd Cir.1990) ( *Paoli* ); *Lewis v. Lead Indus. Assoc., Inc.,* 342

Ill.App.3d 95, 101, 793 N.E.2d 869 (2003) ( *Lewis* ); *Carey v. Kerr-McGee Chemical*

*Corp.,* 999 F.Supp.1109, 1118 (N.D. Ill. 1998); *Allgood v. General Motors Corp.,* 2005

WL 2218371 (S.D.Ind. Sept.12, 2005); *Hansen v. Mountain Fuel Supply Co.,* 858 P.2d

970, 976-78 (Utah 1993) (Hansen ). Consistent with the above case law, Plaintiff's

exposure to the excessive amount of lead demonstrates Plaintiff's actual damages:

> Medical monitoring claims acknowledge that, in a toxic
> age, significant harm can be done to an individual by a
> tortfeasor, not withstanding latent manifestation of that
> harm. Moreover, as we have explained, recognizing this
> tort does not require courts to speculate about the
> probability of future injury. It merely requires courts to
> ascertain the probability that the far less costly remedy of
> medical supervision is appropriate. Allowing plaintiffs to
> recover the cost of this care deters irresponsible discharge
> of toxic chemicals by defendants and encourages plaintiffs
> to detect and treat their injuries as soon as possible."
> *Carrey v. Kerr- McGee Chemical Corp.,* 999 F. Supp.
> 1109, 1119-20 (N.D. Ill. 1998) (Gettleman, J.) (Denying
> defendant's motion to dismiss medical monitoring as actual
> damages in Illinois); *quoting In re Paoli R.R. Yard PCB*
> *Litg.,* 916 F.2d at 852. Courts have routinely held that
> recovery for medical monitoring damages does not depend
> upon demonstration that "...[P]resent injury or upon proof
> that the injury is reasonably certain in the future." *Potter v.*
> *Firedstone Tire & Rubber Co.* 863 P2.d 795, 822-23 (Cal.

1993); *In re Paoli R.R. Yard PCB Litg.,* 916 at 852; (3rd Cir.1990)

As manifested above, medical monitoring has been an accepted form of actual damages. A plaintiff need not even prove present injury or proof of injury to overcome a motion to dismiss. In *Merry v. Westinghouse Electric Corp.,* 684 F.Supp. 847, 849-852 (M.D.Pa.1988) property owners whose wells had been contaminated by toxic substances sought recovery for, *inter alia,* the cost of medical surveillance. In denying defendant's motion for summary judgment, the court ruled "a plaintiff need not exhibit symptoms of a disease before medical surveillance is sought," *Id.* at 849, Consequently, *Merry* suggested that a medical monitoring action could be premised upon proof of exposure to hazardous substances resulting in the potential for injury and the need for early detection and treatment. *Id.* at 850.

Indeed, the facts demonstrate that anyone who applied the relevant lipstick problems to their lips has been exposed to the hazardous substance resulting in the potential of injury and the need for detection and treatment.

Plaintiff relied on Defendant's omission of material fact to her determent. This material fact caused her to purchase the lipsticks. She would have acted differently if this material fact was disclosed by Defendant. Thus, Plaintiff's damages arise from Defendant's material omissions, sufficiently demonstrating proximate cause.

Defendant's case law is misguided. Defendant claims there are four perquisites in determining medical monitoring damages. *In re Paoli*, 916 F.2d 829 at 852. However, this is not the standard at this stage of the litigation. The court clearly states "… [T]hese factors would, of course, be proven by competent expert testimony." *Id.* Clearly, it is

18

premature in this litigation to even deliberate this issue. This is an argument better served in a motion for summary judgment, not a 12(b)(6) claim.

     *Stella* agreed with Plaintiff's argument. *Stella,* 2008 WL 2669662 pg. * 3. ("I find persuasive the federal case law finding such a claim cognizable under Illinois law. *See, e.g., Carey v. Kerr-McGee Chemical Corp.,* 999 F.Supp. 1109, 1118-19 (N.D.Ill.1998) (Gettleman, J.)."

For the foregone reasons the Court should not dismiss medical monitoring as actual damages.

## VII.    **Plaintiff Properly Plead Privity**

Defendant's argument that Plaintiff lacks privity falls flat. Def. Memo. Pg. 13-14. Indeed, Plaintiff demonstrates or pleads the vertical privity needed to pursue both implied warranty claims.

     Plaintiff purchased her product at Walgreen's drug store in Louisville, Kentucky and Chicago, Illinois. (See Exhibit ("Ex.") 1 Declaration of Plaintiff, Don's Frye). In this situation the department store serves as Defendant's agent, therefore the consumer is in privity with the manufacturer.

     The existence of agency is a question of fact and a claim should not be dismissed without giving a plaintiff a chance to prove the existence of the agency relationship." *Caterpillar, Inc., v. Usinor Industeel,* 393 F.Supp.2d 659, 671 (N.D. Ill. 2005)(citation omitted).  "An agent's apparent authority is determined in light of the principal's conduct towards a third party; the principle must do something to lead the third party to believe that the agent is authorized to act on the principal's behalf." *Id.* As Walgreen's drug store and other retailers acted as agents of Defendant, privity is satisfied.

Alternatively, an exception to the privity requirement should be applied. Illinois law has recognized exceptions to the requirement of privity between a manufacturer and seller under certain circumstances. *Patargias v. Coca-Cola Bottling Co.,* 332 Ill.App.3d 117, 133, 74 N.E.2d 162, 169 (1st Dist. 1947)(holding that public policy demands that an implied warranty be imposed on a manufacturer of a drink; *Suvada v. White Motors*, 32 Il.2d 612, 618, 210 N.E.2d 182, 186 (1985) (the Illinois Supreme Court, motivated by protecting the public interest of life and health, stated that "liability of the manufacture and the vender of [of food] is imposed by operation of law as a matter of public policy for the protection of the public")(overruled on other grounds); *Cf. Reed v. City of Chicago,* 263 F.Supp.2d 1123 (N.D. 2003) (holding that under Illinois law detainee who used an isolation gown to hang himself was the beneficiary of warranties even though he was not the purchaser); *see also Collins Co., Ltd. v. Carboline Co.,* 125 Ill.2d 498 516, 532 N.E. 2d 834, 842 (1988);*Whitaker v. Lian Feng Machine Co.*, 156 Ill.App.3d 316, 323, 509 N.E.2d 591, 596 (1st Dist. 1987).

As Plaintiff and other consumers are expected to be the ones to ultimately apply the lipstick to their lips and subsequently ingest the lead –containing product, the application of an exception to the privity requirement is appropriate, given Illinois' track record of recognizing a strong interest in life and health.

## VIII.   Plaintiff Properly Pleads a Claim for The Implied Warranties of Merchantability For Both The Uniform Commercial Code and The Magnuson-Moss Warranty Act.

Plaintiff also pursues a breach of implied warranty count, pursuant to the U.C.C and Magnuson-Moss Warranty Act . Under the UCC in Illinois and other states there exists an implied warranty of merchantability under 810 ILCS 5/2-314 and other

similarly stated statutes. Comp.¶¶ 56-57. The breach of implied warranty pursuant to

Magnuson-Moss Warranty Act provides for a civil action by consumers for failure to

comply arising out of state law. See 15 U.S.C. § 2310(d)(1) Once again, consistent with

the *Stella* ruling, Plaintiff properly pleads both breach of implied warranty counts. In

order for a plaintiff to properly plead a claim under the U.C.C. and the Magnuson Moss

Warrant Act, the plaintiff has to show that the defendants goods are or were not

"merchantable." 810 ILCS § 5/2- 314. For goods to be considered "merchantable," they

must conform to a set of standards which includes being "fit for the ordinary purposes for

which such goods are used." 810 ILCS 5/2-314(c).

In this case, Defendant's relevant lipstick products are not fit for their ordinary

and intended use, the application to a person's lips, because they contain unreasonable

and dangerously high levels of lead. Comp.¶¶ 57, 59, 60, 66, 67, 68 The ordinary use of

these products improperly exposes Plaintiff and other members of the Class to a known,

hazardous substance. Compl. ¶¶ 2-7, 13-15, 35. Defendant argues Plaintiff has not

sufficiently alleged that the lipstick products are not "reasonable safe" and represents that

the FDA has found the lead levels harmless. Def. Memo. 2, 3, 4, 5. As stated above,

Defendant overreaches, as it has been nearly ten years since the FDA has conducted any

scientific inquiry into the presence of lead in lipstick, including the concerned lipstick

product here, and plans to conduct independent testing" of lipsticks. Thus, at very least it

is a question of fact as to whether the lipstick is merchantable. Moreover,

merchantability not only applies to the ordinary use of the product, but also using said

product in a reasonably safe manner.

### a. Plaintiff Satisfied the Notice Requirement for her Breach of Implied Warranty Claims

First, Defendant challenges whether the Plaintiff gave proper notice to plead a breach of implied warranty as required by 810 ILCS 5/2 607(3)(A). Under the UCC and MMA, a buyer must notify a seller of the troublesome nature of the transaction or be barred from recovery for breach of warranty. 810 ILCS 5/2-607(3)(A). However there are two exceptions to this requirement, both apply to Plaintiff's case. "Direct notice is not required when (1) the seller has actual knowledge of the defect of the particular product; or (2) a consumer plaintiff suffers a personal injury, in which case the notice requirement could be satisfied by filing a lawsuit against the seller." *In re McDonald's French Fries Litig.*, 503 F.Supp.2d 953, 956 (N.D. Ill. 2007). Here Plaintiff's pleadings fall under both exceptions. Compl. ¶¶ 25, 68, 69. When these exceptions apply, merely filing the complaint constitutes the notice requirement. *See Stella citing; Allstate Ins. Co. v. Daimlier Chrysler*, 2004 WL 442679 at * (N.D. Ill. Mar. (. 2004 (Lefkow J.); *Citing* Connick v. Suzuki Motor Co. Ltd., 174 Ill.2d 482, 492, 675 N.E.2d 584, 589 (Ill. 1990).

Defendant knew of the specific concern of about lead in its lipsticks. Comp. ¶¶ 67-69. Defendant cannot reasonably argue that it had no knowledge about health concerns relating to lead exposures. It is well known that lead is a health hazard. Compl. ¶¶ 2, discussing the hazards of lead). Further, Defendant knew the inclusion of lead in the lipstick and knew that the lead content of the pigments used in lipstick is regulated. See *Stella*, 2008 WL 2669662 pg. * 3; (. Memo at 1-4) recognizing that the presences of lead in some lipsticks have been "known for many years"). *Gershegorin v. Vienna Beef Ltd,* . 2007 WL 2840476 at * 4.(Defendant had to have known the ingredient in a brand of hot dog were all beef despite the fact that they were made with pork casings. (Defendant advertised their hot dogs were pure beef but omitted the face they contained pork)).

22

The facts and circumstances contained in this case demonstrate that Plaintiff's claim also applies to the second exception. Plaintiff, at the very least during this pleading stage, properly plead Defendant had actual knowledge of the lead in the lipsticks and of the dangers in digesting lead. Compl. ¶¶ 4, 7, 25. Additionally, Plaintiff's complaint, which alleges harmful exposure to lead and seeks medical monitoring for lead, should serve as proper notice or a proper exception to the notice requirement. *Stella,* 2008 WL 2669662 pg. * 2.

The *Stella* court agrees with Plaintiff's argument by ruling both exceptions are suitable substitutions for notice: "When taken as a whole and in the best light to the plaintiff, the complaint sufficiently alleges LVMH had actual knowledge of the presence of lead in the lipstick." *Stella,* 2008 WL 2669662 pg. * 3.

Moreover, Stella ruled that the lipsticks were not 'merchantable,' under both MMA and the UCC, "Both Parties agree the ordinary purpose of lipstick is to color its user's lips in a reasonably safe manner. The complaint plainly alleges the lipstick was not safe." *Id.*

Accordingly, Defendant's motion to dismiss both breach of warranty actions should be denied.

## IX. Plaintiff's Strict liability and Negligence Counts Should Not Be Dismissed

Under strict liability and negligence per se, the economic loss doctrine does not apply to this action. The economic loss doctrine dictates that a plaintiff cannot sue for strict liability or negligence per se exclusively on economic damages. In *Moorman Mfg. Co. v. Nat'l Tank Co.,* the seminal case on the subject, the Illinois Supreme Court articulated three exceptions to the economic loss rule: (1) where the plaintiff sustained

personal injury or property damages resulting from a tortuous event (for example a sudden and dangerous event); (2) where the plaintiff's damages are proximately caused by defendants' intentional and false representation; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions. 91 Ill.2d 69, 86-88, 435 N.E.2d 443, 451 (Ill. 1982). If this case is found to fall under one of the exceptions, Plaintiff's claim for economic damages can be pursued as well.

Here, Plaintiff alleges that her damages were proximately caused by Defendant's intentional and false omission that their product was safe for its intended purpose. Compl. ¶¶ 73, 74. However, this omission resulted in Plaintiff's harm and damages. When analyzing this aspect of the case, the Court must remember that it must take all facts pled as true and construe all inferences in favor of the Plaintiff. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); Fed. R. Civ. P. 9(b). Thus Defendant's attempt to contort the economic doctrine falls flat.

Plaintiff does seek damages for personal injury, which is the first exception to the *Moorman* doctrine. *Moorman Mfg. Co.*, 91 Ill.2d at 86-88, 435 N.E.2d at 451. However, claimants in the putative class who have suffered such damages, have standing to pursue claims for economic loss for the omission or nondisclosure of the health risks encompassed in Defendant's products. "The latent nature of such diseases and injuries can present problems when the claims are analyzed under the traditional common law tort doctrine because, generally, a present injury needs to manifest before it is compensable." *Muniz v. Rexnord Corp.*, 2006 WL 1519571 pg. * 5-6 (N.D.Ill.,2006); *See Paoli,* 916 F.2d at 850; *Lewis,* 342 Ill.App.3d at 100-01, 793 N.E.2d at 869.

24

Here, Plaintiff seeks damages that include the "future costs of medical monitoring to the unreasonable amount of lead in their product." Compl. ¶ 74. *See, e.g., Carey*, 999 F.Supp. at 1120. The cost of future medical monitoring necessitated after exposure to the lead resulting from Defendant's fraudulent and/or negligent conduct does not fall in to the Courts definition of an economic loss. *See Moorman,* 91 Ill.2d at 84, 435 N.E.2d at 450 ("warranty law is suited to correct problems of hazardous products that cause physical injury. Manufactures are better able to bear the risk or to take action to correct the flaws that pose a danger"). Accordingly, tort law is more appropriate to impose a duty on manufactures that their products are safe. *See id.* Thus, Defendant's attempt to dismiss Plaintiff's strict liability count should be denied.

Additionally, the court in *Stella* agreed with Plaintiff's argument. "Because I have already found plaintiff's claim for medical monitoring is a form of personal injury claim…the motion is denied. When the remaining allegations in the complaint are taken as true, plaintiff sufficiently states a claim…" *Stella,*2008 WL 2669662 pg. * 4. Accordingly, Defendant's attempt to dismiss Plaintiff's strict liability claim should be denied.

### X.  Plaintiff's Negligence Count Should not be dismissed

The above quote should also deny Defendant's attempt to dismiss the negligence per se count. The *Stella* court also applied this quote in conjunction with the strict liability ruling. *Stella,*2008 WL 2669662 pg. * 4.

In *Lewis v. Lead Industries Ass'n, Inc.*, 342 Ill.App.3d 95,99-100 793 N.E.2d 869, 872, 873 (Ill. App. 1 Dist. 2003), the plaintiff pursued a negligence per se count. Though this was not granted for reasons irrelevant to this case, the court stated "…the

25

manufacturing Defendants knew of the hazards and toxicity of lead-based paint and, nevertheless, intentionally failed and refused to warn manufacturers, wholesalers, retailers, consumers, purchasers, appliers, and users…" *Lewis*, 342 Ill.App.3d at 99-100, 793 N.E.2d at 872-73. *Lewis* is yet another decision discussing duty to warn about excessive amounts of lead in a product further articulates, "Though there was not a violation of a statute or an act per se, the court sided with the plaintiff argument. IN this case with a similar fact pattern, the court stated, This causation-in-fact requirement entails a reasonable connection between the act or omission of the defendant and the damages which the plaintiff has suffered and is applicable to claims premised upon allegations of negligence ( *Smith v. Eli Willy and Co.,* 137 Ill.2d 222, 233, 560 N.E.2d 324  (Ill. App. 1st 2003)), (strict product liability) (*Smith,* 137 Ill.2d at 232, 560 N.E.2d 324); (*Wehmeier v. UNR Industries, Inc.,* 213 Ill.App.3d 6, 28, 572 N.E.2d 320 (1991)), (and willful and wanton misconduct.)" *Lewis*, 342 Ill.App.3d at 102-03, 793 N.E.2d at 874-5. As discussed above, causation in fact should already have been established. Defendant claims Plaintiff plead her negligence claim incorrectly. However, nothing can be further from the truth, especially when analyzing by the 12(b)(6) standards. Plaintiff has alleged that Defendant's violate federal statutes imposing certain duties on it. For example, the Food, Drug and Cosmetic Act bans introducing cosmetics commercially which "bear or contain any poisonous or deleterious substance which may render it injurious to users under the conditions of use prescribed in the labeling thereof, or under such conditions of use as are customary or usual…" 21 U.S.C. § 331(a).

　　　Plaintiff's complaint alleges that Defendant "manufactured, distributed, delivered, and/or sold cosmetics that contained a poisonous and deleterious substance, lead which

said cosmetics were prohibited by the Food, Drug and Cosmetic Act, thus insuring that the count was plead correctly." Compl. ¶¶ 78-9. This act clearly imposes a duty on Defendant.

Accordingly, Defendant's argument does not hold water, thus demonstrating why its attempt to dismiss Plaintiff's negligence per se and strict liability counts should be denied.

## XI. Plaintiff Has Properly Plead Her Unjust Enrichment Claim

A plaintiff must demonstrate that the defendant retained a benefit to the plaintiff detriment and that retention of said benefit violates the fundamental principles of justice equity and good conscience. *HPI Clark v. TAP Pharmaceutical Products, Inc.*, 343 Ill.App.3d 538, 550, 798 N.E.2d 123, 133 (5th Dist. 2003). In the case at bar, Plaintiff's complaint pleads that a claim, in light of the allegations, that the lipstick contained dangerous levels of lead and which deemed the product unfit for its intended purpose. Compl. ¶¶ 6, 27, 80-85. Furthermore, as discussed above, Defendant's actions deemed their product unfit for their ordinary purposes. Moreover, it was inequitable for L'Oreal to retain the financial benefit received from the sale of their non-merchantable lipstick. This benefit resulted in a determent for Plaintiff. Defendant was able to take advantage of consumers and they benefited from manufacturing and distributing products which many would perceive were unfit for there ordinary purpose because of its omission. Compl. ¶¶ 6, 27, 80-85. Therefore, Defendant must be held accountable for its unjust and unlawful actions and their request to dismiss this count should be denied for such reasons. *See Stella,* 2008 WL 2669662 at * 4-5. ("…it was in equitable for LVMH to retain funds it received as a consequence of the sale of the lipstick.") (denying LVMH's dismissal of

27

plaintiff's unjust enrichment count). Accordingly, Plaintiff's unjust enrichment count should not be dismissed.

## XII.  If The Court Dismisses Any of Plaintiff's Claims, Plaintiff Should Be Granted Leave to Amend Their Complaint.

Alternatively, if the Court decides to dismiss any of the above claims, Plaintiff should be granted leave to amend her Complaint, so as to cure any potential defects in pleading that the Court may recognize in so ruling.

### Conclusion

For the reasons argued above, Plaintiff, Don's Frye, respectively requests that the Court deny Defendants' motion to dismiss, and grant such other relief as the Court deems appropriate.

Respectfully submitted,

_/s/ Aaron R.Walner_____
One of the Plaintiffs Attorneys

Dated:  August 14, 2008

Lawrence Walner
Michael S. Hilicki
Aaron R. Walner
LAWRENCE WALNER & ASSOCIATES, LTD.
150 North Wacker Drive
Suite 2150
Chicago, Illinois 60606
(312) 201-1616 – Phone
(312) 201-1538 – Fax

Attorneys for the Plaintiff

28