**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DON'S FRYE, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Court No.:  08 C 213 |
| v. | Judge Gettleman |
| L'OREAL SA, FRANCE, a French Corporation, and L'OREAL USA, INC., a New York corporation, | Magistrate Judge Denlow |
| Defendants. | |

**L'OREAL USA INC'S REPLY IN FURTHER SUPPORT OF MOTION PURSUANT TO RULE 12(B)(6)**

## I.    Introduction

Plaintiff Don's Frye has sustained no injury in fact, no measurable loss, no injury, and has no claim.  Her Opposition to L'Oreal's motion has dug her an even deeper hole than did her Complaint.  Astonishingly, a new, compelling reason to dismiss her Complaint has emerged -- she attests to having purchased the product of a *different* manufacturer.  She has submitted an affidavit claiming that she purchased a *Christian Dior* product, "Addict Positive Red," and fails to mention any purchase of the L'Oreal products identified in her complaint.  See Frye's affidavit dated August 5, 2008, Exhibit 1 to Frye's Opposition, cited in Opp. at p. 19.  And if this were not enough, Plaintiff claims to have purchased the Dior product at Walgreen's for about $10.  Christian Dior does not sell its lipsticks in drug stores[1], does not sell its product at Walgreen's[2], and Dior products cost much more than $10.  For example, Bloomingdale's website shows the cheapest Dior product as costing around $25.[3]

---

[1] See Christian Dior store locator on its website at www.dior.com.
[2] See Walgreen's product list at http://www.walgreens.com/beauty/default.jsp?headerSel=yes&tab=beauty
[3] See Bloomingdales website www.bloomingdales.com, beauty brands.

Plaintiff's affidavit defies credulity. If she cannot explain this discrepancy, L'Oreal respectfully requests that the Court dismiss her action and order reimbursement of L'Oreal's defense costs. Alternatively, L'Oreal respectfully requests that this Court issue an Order to Show Cause why it should not strike her class allegations on the ground that she cannot, as a matter of law, serve as an adequate class representative.

## II.    Plaintiff's Opposition

### A.    Overview

Plaintiff's false affidavit aside, Frye relies heavily on an opinion issued by another Court within this district – *Stella v. LVMH*, 2008 WL 2669662 (N.D. Ill.) to support her claim. L'Oreal was not a party to that action, did not have an opportunity to brief or argue the issues, and in any event, will demonstrate that the motion before this Court bars Plaintiff's complaint for reasons not inconsistent with the analysis of the *Stella* opinion.[4]

If the Court reaches the merits of L'Oreal's motion, Plaintiff's opposition underscores three simple reasons this Court should dismiss the Complaint:

1)    Her complaint alleges facts that lead to the ineluctable conclusion that the lead alleged to exist in L'Oreal's lipstick yields lower exposures than Plaintiff (and the FDA) admits are safe. Plaintiff has affirmatively pled herself out of court by alleging facts that contradict her conclusory statements about the health risks posed by lead in lipstick. *See, e.g., Weisbuch v. County of Los Angeles*, 119 F. 3d 778, 783 fn.1 (9th Cir. 1997); *Bender v. Suburban Hosp., Inc.*, 159 F. 3d 186, 192 (4th Cir. 1998).

2)    Her causes of action all suffer from legal defects that defeat each of her claims; and

---

[4] Another federal court has recently dismissed a nearly identical complaint against L'Oreal based on the lack of any injury in fact, ascertainable loss or damage. *Korontholy v. L'Oreal*, 2008 WL 2938045 (D.N.J.).

3)    The judicially noticeable materials cited by L'Oreal dispel any plausibility that might attach to her claim. *Bell Atlantic v. Twombley*, 127 S. Ct. 1955 (2007).

**B)    The Lead Concentrations Alleged to Exist in Lipstick Are Not Harmful**

Plaintiff's Complaint and Opposition have admitted the following facts, which doom her complaint:

- Plaintiff admits that not all lead exposures are hazardous, and does not interpret her complaint as making such a contention. Opp. at 6.

- Plaintiff admits that enforcement standard of .1 ppm/lead set by the FDA for lead in candy is "accepted," "acceptable" and designed to protect consumers from ingestion of lead. Comp. ¶¶ 29, 31, 32; Opp. at 3-4

- Plaintiff alleges that a woman may consume four pounds of lipstick in a lifetime. Compl.¶ 23. Taking this allegation as true, four pounds of lipstick consumed over 70 years yields an anticipated daily intake of lipstick of .071 grams.

- Plaintiff has alleged that L'Oreal's products contain up to .65 ppm of lead.

In making these allegations, Plaintiff has negated her own claim because:

- L'Oreal has demonstrated through a judicially noticeable document – Exhibit F – that FDA based its enforcement standard for lead in candy on an assumption that daily candy servings are 21 grams. (And Exhibit F notes that FDA believes that many candy serving sizes are much larger than 21 grams, which is one reason that it lowered the enforcement standard from .5 ppm to .1 ppm.) L'Oreal respectfully requests that this Court take judicial notice of Exhibit F.[5]

- L'Oreal, through a simple mathematical calculation based on the different daily exposure intakes allegedly presented by candy and lipstick, has demonstrated that daily exposure to lead from lipstick will be approximately *45 times lower* than daily exposure to lead in candy at the level that Plaintiff agrees is "accepted" and "acceptable." L'Oreal respectfully requests that the Court take judicial notice of the calculations set forth in Exhibit G.[6]

Despite Plaintiff's argument that L'Oreal has improperly availed itself of judicial notice, all of these facts derive from the face of the Plaintiff's complaint. She, herself, has cited the candy

---

[5] *Menominee Indian Tribe v. Thompson*, 161 F. 3d 449, 456 (7th Cir. 1998); *United States v. Wood*, 925 F. 2d 1580, 1582 (1991); See Moving Brief at foot note 1.

[6] Under FRE 201, the Court may take judicial notice of facts commonly known and not reasonably in dispute. To the extent that the calculations on Exhibit G reflect facts, L'Oreal requests that the Court take judicial notice of them.

standard as presenting a safe threshold of exposure. L'Oreal has merely compared the amount of lead ingested through candy and the amount allegedly ingested through lipstick based on Plaintiff's own allegations.

### C) Plaintiff's Opposition Does Not Establish that Her Claims are Plausible

In the face of an opinion by the California Attorney General that the highest levels of lead reported in lipstick are 10 times lower than a level that might warrant a warning under the strictest warning statute in the US (California's "Proposition 65," a statute that Plaintiff's opposition expressly admits is strict – see Opp. at 5), and, therefore, 10,000 times lower than the level at which **no** adverse health effects are observed, she claims that L'Oreal withheld "material" information regarding lead in its products. She wants L'Oreal to refund the purchase prices paid for its lipsticks over an indefinite period, and wants medical monitoring for everyone who ever used those products. If this sounds absurd, it is. Under *Bell Atlantic*, this Court may consider absurdity in ruling on a Rule 12(b)(6) motion.

## III.    Argument

### A.    This Court Should Dismiss the Complaint Based on Plaintiff's Affidavit or, Alternatively, Issue an Order to Show Cause Why the Class Allegations Should not be Dismissed

Plaintiff, of course, need not have submitted any affidavit in opposition to L'Oreal's motion, but apparently did so in order to help establish that her claims have merit. Opp. at p.19. *See, e.g., Albeiro v. City of Kankakee*, 122 F. 3d 417, 419 (7th Cir. 1997). She accomplished the opposite. Not only did she provide no relevant information, the affidavit reflects a basic miscomprehension as to whom she has sued and the products involved. She has not identified any purchase of products manufactured by L'Oreal, the only defendant in this action. Worse yet, the affidavit contains patent falsehoods about the products she bought – she simply did not, and could not, have purchased Christian Dior Addict Positive Red at Walgreen's, much less at the price claimed.

If Plaintiff cannot explain this discrepancy, this Court should dismiss her claims and award L'Oreal the costs and fees it has incurred in defending a case that lacks any factual basis. Alternatively, L'Oreal respectfully requests that the Court order Don's Frye to Show Cause why the class allegations should not be stricken. Her affidavit suggests that she is not a member of the class that she purports to represent, and, to the extent that she has submitted false testimony under oath, she has fatally undermined her ability to represent the purported class. *See, e.g., Folding Cartons, Inc. v. American Can Co*, 79 F.R.D. 698 (N.D. Ill. 1978)(plaintiff an inadequate class representative, having been censured by another court for deceitful conduct); *Weisman v. Darneille*, 78 F.R.D. 669, 670-71 (S.D.N.Y. 1978)(Class representative inadequate where he was convicted of violating the same securities statute he sought to enforce as class representative); *Amswiss International Corp., v Heublein, Inc.,* 69 F.R.D. 663 (N.D.Ga. 1975)(class representative inadequate based on violation of securities law and lack of credibility.)

**B.    Plaintiff Has not Stated a Claim for Consumer Fraud**

*1)    Plaintiff Has Sustained No "Actual Damage"*

Plaintiff has not stated a claim under the Illinois Consumer Fraud Act because she has not shown that she has sustained any injury-in-fact or actual damage.[7] In the face of Illinois Supreme Court authority explaining that mandatory nature of the "actual damage" requirement,[8] Plaintiff adheres to her argument that she has sustained damage because she would not have purchased the lipstick had she known of the lead. But this allegation does not show an economic loss, as she has

---

[7] She lacks Article III standing because she has no injury in fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)(an injury in fact is "an invasion of a legally protected interest which is a) concrete and particularized and b) 'actual or imminent, not conjectural or hypothetical.'"); *Koronthaly v. L'Oreal*, 2008 WL 2938045 (D.N.J.)

[8] *Avery v. State Farm*, 216 Ill. 2d 100, 195-199 (2005); *Price v. Philip Morris*, 219 Ill. 2d 182, 281 (2006)(Karmeier Concurring). *See, also Mulligan v. QVC, Inc.* 2008 WL 1990450, *6-*7 (1st. Dist. 2008). Plaintiff attempts to distinguish these cases on their facts and procedural setting, but fails to recognize that, in each instance, the courts found that the plaintiffs had received something of economic value commensurate with what they paid. As for her attempt to distinguish *Avery*, the lack of a secondary market for lipstick is irrelevant, as Plaintiff has not alleged any difference between the price paid and the economic value of the product as received. In *Avery*, the secondary market sale of the repaired vehicle simply disproved the existence of an impact on value. Here, Plaintiff has not pled facts to show any difference in economic value at the time of purchase. She simply wants her money back.

not pled any facts to demonstrate that the lipstick did not have the market value she paid for it. *Mulligan v. QVC*, 382 Ill. App. 3d 620 (1st. Dist. 2008)(explaining that the benefit of the bargain rule compensates the plaintiff for the economic difference between what she paid for and what she received, and entered summary judgment where Plaintiff received a product worth what she paid for it, despite alleged deception.)    She has based her claim on a subjective preference, devoid of monetary value.  See, e.g., *Chavez v. Blue Sky Natural Beverage Co.*, 503 F. Supp. 2d 1370, 1373-1374 (N.D. Cal. 2007)(no injury in fact where false representation that beverage was made in New Mexico, when it was not, had no monetary value); *Parker v. Howmedica Osteonics Corp.*, 2008 WL 141628 (D.N.J.)(no ascertainable loss where plaintiff sought refund of purchase price merely on allegation that she would not have had medical device implanted had she known that it would squeak, where alleged defect did not impair value of the device.)

        The fact that Frye asks for money does not show that she has sustained actual damage. *Rivera v. Wyeth-Ayerst*, 283 F. 3d 315, 320 (5th Cir. 2002) ("Merely asking for money does not establish an injury in fact.")  And she most emphatically does not understand that a claim for "restitution" (available to the State of Illinois when it sues on the public behalf under 815 ILCS 505/7(a)) is different from "actual damage" (the touchstone for a private right of action under the 815 ILCS 505/10a.)  She has not cited any case where a plaintiff recovered under the CFA for the purchase of a product whose value at the time of purchase was not affected by the alleged deception.

        In an effort to obfuscate the relevant issues on medical monitoring, Plaintiff labors mightily to demonstrate what L'Oreal has readily acknowledged in its opening brief – that certain courts, including this one, have allowed the recovery of medical monitoring expenses where medically necessary to detect the onset of disease.  The real issues before this Court are 1) whether a plaintiff may recover such damages in the absence of an existing physical injury, *Jensen v. Bayer*, 371 Ill.

App. 3d 682, 692-693 (1st Dist. 2007)(noting that the Illinois Supreme Court has not recognized medical surveillance as a compensable harm in the absence of physical injury),[9] and, 2) whether the plaintiff has pled facts, as opposed to conclusions, to show entitlement to medical monitoring expenses. L'Oreal respectfully submits that she has no entitlement to medical surveillance where her complaint admits that exposures to lead in lipstick are less than "accepted"/"acceptable" exposures to lead in candy; where she has not pled facts to show that L'Oreal's products caused her a medically significant exposure to lead[10]; where she has not alleged that she will receive any clinical benefit from surveillance; where she has pled no facts to show a "significantly increased risk of contracting a serious disease;" where she has sustained no physical injury; and where she has not spent a dime on monitoring to date.

### 2) *Plaintiff has not adequately pled a claim for consumer fraud.*

Plaintiff claims to have pled the elements of a claim for consumer fraud, but ignores the arguments raised in Section II (B)(3) of L'Oreal's motion: she has not pled the basis for her consumer fraud claim as required by Rule 9(b), and she has not properly alleged an intent that others rely on L'Oreal's alleged omission, as required to state a CFA claim predicated on the non-disclosure of a material fact. *See, Jensen v. Bayer*, 371 Ill. App. 3d 682, 689 (1st Dist. 2007)(no liability unless the fact concealed was known to the seller at the time of the concealment.)

---

[9] Many courts do not. See, e.g., *Metro-North v. Buckley*, 521 U.S. 424 (1997); *Wood v. Wyeth Ayerst*, 82 S.W.2d 849 (Ky. 2002); *Henry v. Dow Chemical*, 473 Mich. 63, 68-69 (2005); *Paz v. Brush Engineered Materials*, 949 So. 2d 1 (Miss. 2007); *Parker v. Brush Wellman*, 377 F. Supp. 2d 1290 (N.D. Ga 2005); *Lowe v. Philip Morris*, 207 Or. App. 532 (2006); *Duncan v. Northwest Airlines*, 203 F.R.D. 601 (W.D. Wash. 2001). See also Henderson, Twerski, *Asbestos Litigation Gone Mad: Exposure Based Recovery for Increased Risk, Mental Distress and Medical Monitoring*, 53 S.C. Law. Rev. 815 (2002); Schwartz, *Medical Monitoring – Should Tort Law Say Yes?*, 34 Wake Forest Law. Rev. 1057 (1999). The Court need not reach the issue as the other infirmities of plaintiff's complaint negate any potential for the recovery of such damages.
[10] Plaintiff's affidavit regarding her purchase and presumed use of Christian Dior's Addict Positive Red underscores the absurdity of her claims, as she apparently claims that a single tube of Dior lipstick will qualify her for medical surveillance.

With respect to the specificity of her complaint, she purports to base it on affirmative and "implied representations" (¶48) but she has not identified either. She has nowhere alleged the "who, what, where, when, or how" of any affirmative representations, much less that she saw or heard them. She has nowhere alleged the "type of facts omitted, the type of document in which they should have appeared, and the way in which their omission made the document misleading." *Fujisawa Pharaceutical Co., Ltd v. Kapoor*, 814 F. Supp. 720, 727 (N.D. Ill. 1993). She has not alleged that she saw documents in which L'Oreal allegedly withheld information, although she does state in her opposition, *for the first time*, that the misrepresentations and omissions occurred in advertisements, catalogues, brochures, instructions, labels and packaging distributed throughout the United States.[11]

As for the statutory requirement that she demonstrate that L'Oreal withheld information with "an intent that others rely" on the omission (815 ILCS 505/2), Plaintiff argues that she should have an opportunity to conduct discovery to determine whether L'Oreal knew of the alleged dangerous concentrations of lead in its products at the time of sale. (See Opp. at fn 4.) She misses the point. Her complaint alleges that L'Oreal "knew *or should have known,*" but has done so on "information and belief" without alleging facts on which she bases her information and belief, and without alleging facts to show that one state of knowledge is more likely than another. As did plaintiff in *Bell Atlantic*, she has failed to allege facts to make one conclusion – that L'Oreal "knew" – more plausible than a non-actionable alternative – that L'Oreal "should have known." This is not a matter of giving favorable inferences to her pleading, but of her pleading creating conflicting inferences with no factual allegation to nudge her claim from the speculative to the plausible. She cannot get to discovery without having pled a claim, and pled a claim she has not done.

---

[11] Plaintiff cites paragraphs 6, 47 and 48 of her complaint, but these paragraphs say absolutely nothing of the sort.

**C.    Plaintiff's Warranty Claims Fail for Lack of Privity and Lack of Notice**

*1)    Plaintiff Has Not Properly Pled Privity*

Citing her affidavit, which is irrelevant at best and perjurious at worst, plaintiff contends that she has pled privity by demonstrating an agency relationship between L'Oreal and Walgreen's. Her complaint merely states that L'Oreal sold its products through "retailers." (Comp. ¶ 17)  The Complaint alleges no facts to support the existence of an agency relationship, and Frye's affidavit identifying Walgreen's as the retailer supplies no relevant information. This Court may reject this argument out of hand.

Plaintiff does not mention the *Stella* Court's holding that privity is not required where the plaintiff alleges personal injury.   Here, however, Plaintiff has alleged no personal injury, only a claim for economic recovery for medical expenses.  She, herself, characterizes her claims as being for "purely economic loss."  See Compl. ¶73.  Also, as shown above, she has not pled any factual basis for medical monitoring expenses.  Lack of privity further bars any claim that she might assert for recovery of her purchase price, even if that were a recoverable damage, which it is not.

*2)    Plaintiff Has Not Satisfied the Notice Requirement of 2-607*

Plaintiff does not suggest that she ever gave notice as contemplated under 810 ILCS 5/2-607(3)(a), but, citing *Stella*, argues that she need not have done so by virtue of the "actual knowledge" and "personal injury" exceptions set forth in *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 491-493 (1996).  Neither exception should apply on the facts pled.

With respect to the "actual knowledge" exception, Plaintiff has made only the conclusory assertion that "L'Oreal knew or should have known that the concerned lipstick products did not meet the capabilities represented and marketed."  Compl. ¶ 68.  As noted above, this "knew or should have known" does not meet the requirements of *Bell Atlantic*, because plaintiff has not alleged any facts to show it more likely that L'Oreal actually knew, as opposed to "should have known."  The

content of the report entitled "A Poison Kiss" certainly cannot satisfy the actual knowledge requirement any more than did the filing of safety related product liability lawsuits in *Connick* or the federally mandated vehicle recall in *Perona v Volkswagen* 292 Ill. App. 3d 59, 63-65 (1st Dist. 1997).

As for the personal injury exception, plaintiff has not pled a claim for personal injury, and her claim for medical surveillance fails as a matter of law. Moreover, the personal injury exception obviously cannot save her claim for the recovery of the purchase price.

> 3)    *Plaintiff has not Pled a Breach and She Has Sustained no Damage*

Having pled facts demonstrating that lead in lipstick yields lesser exposures than the "accepted"/ "acceptable" lead in candy, Plaintiff has not pled a basis on which to claim that L'Oreal sold un-merchantable lipstick. Equally she has not identified any facts to support a claim for medical monitoring, and her claim for recovery of her purchase price fails under 810 ILCS 5/2-714.

### D.    Plaintiff Cannot Sustain Her Tort Claims

Plaintiff's opposition does little to save her tort claims. Not only has she not alleged any compensable harm, she has also runs afoul of the economic loss rule and miscomprehends the doctrine of negligence *per se.*

Regarding the economic loss rule, her claim for recovery of her purchase price, even if it were a valid claim, seeks nothing more than compensation for disappointed economic expectations. It thus runs afoul of the rules stated in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 88 (1982). *See also City of Chicago v. Beretta*, 213 Ill. 2d 351, 416-424 (2004) To the extent that she invokes a "fraud" exception to the economic loss rule, she has not adequately pled fraud, consumer fraud, or any other conduct to support this exception. Finally, she has not pled any basis for the recovery or future medical expenses.

Plaintiff's defense of her claim for "negligence per se" is extremely difficult to understand. As set forth in L'Oreal's motion, however, Plaintiff has not pled the elements of even a simple negligence claim because she has not identified a specific statute that L'Oreal has violated; has not alleged that the statute was designed to prevent the economic harms she claims here, or that she belongs to the class of persons to be protected by the statute.

### E.    Plaintiff Has no Claim for Unjust Enrichment

Based on the authorities cited by L'Oreal, and un-refuted by Plaintiff, Frye's claim for unjust enrichment must fail – she simply has not shown that, in the absence of actual deception or a viable consumer fraud claim, a claim for unjust enrichment can exist.

### F.    *Bell Atlantic* Underscores the Role the Rule 12(b)(6) Plays in Short Circuiting Bogus Claims Like this One

As a final matter, Plaintiff's opposition argues that L'Oreal has misused requests for judicial notice to provide evidence to defeat her claims. Not so. The Supreme Court's decision in *Bell Atlantic* noted that antitrust litigation poses enormous risks and expenses to defendants. Its desire to conserve judicial resources and protect defendants from the *in terrorem* effect of massive litigation animated its decision to "retire" the "no set of facts" standard of *Conley v Gibson,* 355 U.S. 41 (1957). The 7th Circuit has, itself, noted that cases involving complex issues or presenting an "*in terrorem*" effect necessitate a greater degree of fact pleading. *Limestone Development Corp., v. Village of Lemont, IL,* 520 F. 3d 797, 802-804 (7th Cir. 2008).

Frye's Complaint presents a "poster case" for application of *Bell Atlantic's* mandate. Her allegations seek recovery, nationwide, of monies spent for the purchase of L'Oreal products over an indeterminate amount of time. The basis for her claims, however, is preposterously absurd given the position that expert agencies, charged with sovereign authority to protect the public health, have taken in relation to the lead in lipstick issue. The FDA has clearly stated that the fact that it has

based its enforcement standard for candy on a lower concentration of lead than found in some lipsticks does not mean that the lipsticks present a hazard. The California Department of Justice has noted that lead in lipstick presents a level of risk ten times lower than might require a warning under proposition 65 - a level of exposure 10,000 times lower than the No Observed Effects Level.

L'Oreal did not attached judicially noticeable documents for the truth of the matters asserted, but rather to show the positions of these public health authorities. These government agencies have evaluated the issues raised by Don's Frye, and view them as of no consequence to public health. They help confirm the implausibility of the claims of this Plaintiff, who has

- submitted a false affidavit attesting to the purchase of another company's products;
- sustained no actual injury or economic damage; and
- alleged facts to show that lead in lipstick yields lower exposures than she admits are safe.

L'Oreal respectfully requests that this Court dismiss her claim.

## IV.    Conclusion

Wherefore, for the reasons stated in L'Oreal's moving papers and in this reply, and based on the matters judicially noticeable and submitted in connection with this motion, L'Oreal respectfully requests that this Court dismiss Plaintiff's claims with prejudice.

Respectfully Submitted,

**SEDGWICK, DETERT, MORAN & ARNOLD LLP**

By:_____s/ Anthony J. Anscombe_____
One of the Attorneys for Defendant

Anthony J. Anscombe ARDC# 6257352
C. Kinnier Lastimosa ARDC# 6277860
SEDGWICK, DETERT, MORAN & ARNOLD LLP
One N. Wacker Drive, Suite 4200
Chicago, IL 60606
Telephone: (312) 641-9050
Facsimile: (312) 641-9530